JOHNSON et ux. v. BRINKERHOFF et al.

No. 5640.   Decided May 11, 1936.   (57 P. [2d] 1132.)

*D. N. Straup* and *Willard Hanson,* both of Salt Lake City, and *E. Vance Wilson,* of Fillmore, for appellant.

*Skeen & Skeen,* of Salt Lake City, for respondents Johnson.

*W. B. Higgins,* of Fillmore, for respondents Hansen.

*Sam Cline,* of Milford, for respondent State Bank of Millard County.

FOLLAND, Justice.

This cause arises because of disputed claims to the use of underground waters flowing from three artesian wells drilled on the land of the defendant David A. Brinkerhoff. The total flow from the wells is 1.1 cubic feet per second, or 411.75 acre feet during the irrigation season of 183 days. Plaintiffs claim 6/17 of the water, over and above 140 acre feet per season, conceded to defendant. The second amended complaint is for damages for deprivation of use of the water, and to have title quieted in plaintiffs for the amount of water claimed. Cross-complainants John Hansen and wife make claim to the same amount of water, ask for damages, and a decree quieting title. From a decree and judgment in favor of plaintiffs and cross-complainants, for damages, for 6/17 of the well water over and above 140 acre feet, and limiting defendant to 140 acre feet per season, the defendant appeals. The errors assigned and argued are: (a) Refusal to strike the second amended complaint of plaintiffs, alleged to be the substitution of a new and different cause of action; (b) admitting in evidence and considering certain deeds and mortgage; (c) insufficiency of the evidence to support the finding as to damages; and (d) permitting plaintiff to maintain the cause without first submitting the controversy to arbitration as provided by contract.

Johnson, Hansen, and Brinkerhoff each own and operate farms in Millard county, located in the same general vicinity. The land of each farm is arid and the parties depend on well water for irrigation to produce crops. These parties, and others, entered into a written contract respecting the water prior to the time either of them took title to the lands they now occupy, unless it be the defendant Brinkerhoff whose deed is dated the same day. When defendant's deed was executed with reference to the time of making the contract and when delivered is not shown. The State Bank of Millard County was agent for the lands conveyed, and its

cashier, Parker Robison, was the active agent in arranging the sale. The written documents involved, so far as affecting water rights, are quoted in full as follows:

Contract of March 3, 1928:

"This agreement made and entered into this 3rd day of March, A. D. 1928 by and between David A. Brinkerhoff and A. F. Robison as parties of the first part and James Mitchell of Fillmore, Utah, John Hansen of McCornick, Utah, F. W. Johnson, McCornick, Utah, Roy Davies of Fillmore, Utah and Amos F. Terry of Delta, Utah, as parties of the second part.

"That the parties of the first part own 80 acres of land known as the Frank Robison Farm at Flowell, and particularly described as follows:

"The south half of the Northwest quarter of Sec. 17, Township 21, South, Range 5 West S. L. M. Utah, together with an artesian well now located on the Southeast corner of said land; now in consideration of all of the parties of the second part joining together at their own expense and drilling two more wells and also drilling 100 feet deeper on the present well, said wells to be located on the upper part of the above described land, the parties of the first part do hereby give a right to drill said wells with the understanding that the parties of the first part allow the parties of the second part absolute right to the use of all developed water over and above a sufficient amount to properly irrigate said land above described, with the further agreement that in case of shrinkage in water that the said second parties are to allow the land above mentioned to have all water if necessary up to 1¾ acre feet for said land; in other words, the land above described is to have a preferred right in case the water is not sufficient to irrigate all the land in said project. The parties of the first part do hereby give a right-of-way for reservoiring said water on the upper part of the land above described, said reservoir to be of sufficient size to properly reservoir the water for twelve hours at a time. The parties of the first part do also give the second parties right-of-way for ditches to convey the water to their respective farms. The parties of the first part do also give the parties of the second part the right to drill as many wells as are necessary to properly irrigate all of their said lands and not to exceed 200 acres in addition to the land above described. Each party of the second part further agrees to stand his part of the expense of ditching and dyking and building of reservoirs for the proper irrigation of their lands. The second parties agree to stand all the cost of drilling as a consideration for the right to drill. The parties of the first part also give the parties of the

second part the right to pump said wells should they cease to flow sufficient to properly irrigate all of said lands with the understanding that all parties of the second part hereto stand the cost of pumping equally. If all wells in the flat become pump wells, then after five years first party stands his part of pumping.

"All parties hereto do hereby agree to allow Parker Robison as agent, to arrange for pipe and drilling and they agree that all the costs of the same is to be added to the mortgage and note of the parties of the second part, prorated according to the number of acres each member of the second part has under said project.

"In case any disagreement ever arises over this contract, all parties hereto agree that the State Bank of Millard County shall have the right to arbitrate said differences and all parties hereto agreed to be bound by the decision made by the officers of said bank."

Warranty deed from A. Wayne Robison and wife to Brinkerhoff, dated March 3, 1928, recorded February 20, 1930:

"A. Wayne Robison and Fern Robison, his wife, Grantors of Fillmore City, Millard County, State of Utah, hereby convey and warrant to David A. Brinkerhoff of McCornick, Millard County, State of Utah, for the sum of Ten Dollars and other valuable considerations the following described real estate in Millard County, State of Utah, to-wit:

"The South half of the Northwest Quarter of Section (17) Seventeen in Township (21) Twenty-one South, Range (5) Five West, Salt Lake Meridian, containing 80 acres, together with all improvements thereon, subject, however, to the right of John Hansen, F. Wells Johnson and Roy Davies to drill wells on the east end of said land, as many wells as they desire, and subject to a reservoir on the east end of said land sufficiently large to hold all the water from said well for 12 hours and subject to their right to pump said wells hereafter if they desire and subject to suitable right of way for ditch leading from said reservoir along the north boundary of said land. However, the Grantee herein is to be protected by the said Hansen, Johnson and Davies in a preferred water right from said wells amounting to 140 acre feet per irrigation season for each and every year hereafter. If the water should later fail to equal 140 acre feet per irrigation season then the Grantee herein named is to have all of the water up to that amount and if after five years all of the wells become pump wells the said Grantee herein named is to stand his pro-rata cost of the pumping according to the number of acres each one has under said wells. If the water shrinks so that the said Johnson, Hansen, and Davies

are not interested in pumping then they are in no way obligated to do so as long as they do not hinder the said Brinkerhoff from so doing and having what water he develops. The said Brinkerhoff is not hindered by this deed from drilling independent wells on said property and having all the waters therefrom."

Quitclaim deed from A. Wayne Robison and wife to Francis Wells Johnson for water only dated March 3, 1928, which was delivered about July, 1930, and recorded August 8, 1930:

"A. Wayne Robison and Fern Robison, his wife, Grantors, of Fillmore City, Millard County, State of Utah, hereby Quit Claim to Francis Wells Johnson of McCornick, Millard County, State of Utah, Grantee for the sum of $1.00 and other valuable considerations, the following described property in Millard County, State of Utah:

"An undivided (6/17) six seventeenths interest in and to all water to hereafter be developed, by him, subject to a first right which is reserved in the Grantors of 140 acre feet of water per irrigation season each and every year hereafter, the said Grantee being required as a part consideration to drill wells on the east end of the South half of the northwest quarter of section seventeen in township twenty one south range 5 west S. L. M. Utah and a right of way is hereby given to drill said wells and a suitable reservoir right is hereby given on the east end of said property together with ditch rights from the said reservoir along the north side of the property above mentioned to the land of the Grantee, which is situated to the northwest of the land above described. The Grantee having full and peaceable right hereafter to drill as many wells as he wishes on the east end of said property and to pump the same if he desires and he is at all times hereafter to own and operate and control 6/17 of all surplus water hereafter developed by him over and above 140 acre feet for each irrigation season hereafter. The Grantee is restricted in the use of the water on more than 60 acres."

Quitclaim deed from A. Wayne Robison and wife to John Hansen for water dated March 3, 1928, recorded August, 1930, delivery date not shown, is the same except for grantees as the one next above quoted.

Mortgage by David A. Brinkerhoff and wife to the State Bank of Millard County, dated March 3, 1928:

"All of the South half of the Northwest Quarter of Section Seventeen, in Township twenty-one South, Range 5 West, S. L. M., Utah, together with improvements thereon or to be placed thereon hereafter, whether moveable or stationary, including all rights to under-ground water and wells now on the ground or to be drilled hereafter until the debt which this mortgage secures is fully paid. This mortgage is given, however, subject to a right to the use of water which has heretofore been contracted to John Hansen, Wells Johnson, Roy Davies and James Mitchell, which right is for the use of water each year beyond 140 acre feet of water."

Hansen obtained title to his land by deed from James Mitchell and Carrie Mitchell, his wife, dated July 31, 1929. Johnson obtained title to the land he occupies by deed from Parker Robison and wife dated July 31, 1929. All parties were in possession from some time in 1928, or prior thereto. The exact time is not shown.

Neither tract of land was fully under cultivation in 1928 when the contract above set forth was entered into. Each of the parties broke up land and extended the area under cultivation from year to year. By 1932 Brinkerhoff had his entire 80 acres broken and under cultivation. The water from the wells was apparently insufficient to provide irrigation for all the land in the three tracts. We say apparently because there is no evidence showing the nature of the soil or the duty of water, but had there been sufficient water, undoubtedly this controversy would not have arisen. For some reason not disclosed, pumping operations were not resorted to, although clearly contemplated in the contract and deeds. At the time the contract was made in March of 1928 there was one well on the Brinkerhoff tract of land, but the amount of flow is not shown. Johnson, Hansen, and Roy Davies drilled two additional wells and deepened the Brinkerhoff well by 100 feet in the spring and summer of 1928. Reservoir and ditches were also constructed. The money with which to do this work was advanced by the bank which took mortgages from Johnson and Hansen. What Davies' interest is or was is not shown. During the first

two or three years after completion of the wells the water was used in rotation, Johnson and Hansen each using the whole supply three days and Brinkerhoff six days with an additional extra day occasionally. In 1931 or 1932 Brinkerhoff asserted he needed all the water for his 80 acres and forbade the others taking any of the supply. This action followed in March of 1932. Roy Davies, Burt Cluff, and Amos F. Terry were made parties defendant on filing the first complaint, but were later dismissed out of the case. The bank and J. W. Jones and Herbert Taylor, examiners in charge, were first made parties, but later dismissed, and still later by defendants' answer brought back into the case. By the decree the cause was dismissed as to the bank and the examiners Jones and Taylor. This appeal affects the rights only of Johnson, plaintiff and respondent, Brinkerhoff, defendant and appellant, and Hansen, cross-complainant.

The court considered the contracts and deeds of March 3, 1928, as one agreement and construed the provisions of such agreement as limiting the right of Brinkerhoff to 140 acre feet per season, or 1¾ acre feet per acre per season, and awarded him that quantity of water from the three wells, and awarded to each Johnson and Hansen 96 acre feet per season, or 6/17 of the total remaining flow. It will be noted that the allocation is of only 326 acre feet out of a total flow of 411.75, leaving 79.75 acre feet not disposed of.

The first point made by appellant is that by the second amended complaint plaintiff was permitted to introduce a new and different cause of action than that originally sued upon. In plaintiff's complaint it was alleged that the plaintiff and James Mitchell, John Hansen, Roy Davies and Amos F. Terry were the owners of and entitled to all the water developed by them from certain wells which had been drilled by them on the land of Brinkerhoff, in excess of sufficient to provide for the irrigation of defendant Brinkerhoff's described land to the extent of 1¾ acre feet for each irrigation season pursuant to a contract in

writing between the parties of date March 3, 1928 (the contract was neither copied in the complaint nor attached thereto); that defendant wrongfully refused to permit the developed water to flow to and upon plaintiff's land to plaintiff's damage in the sum of $750. The first amended complaint, which would seem to be a clear departure from the cause of action set forth in the complaint, sought recission of the contract of sale and deeds for both land and water and a return from the bank and its examiners of the money theretofore paid by plaintiffs to the bank. We are not here concerned with this pleading, as it was wholly abandoned and superseded. The second amended complaint alleged ownership in plaintiffs to the waters developed by the wells in excess of 1¾ acre feet per acre each irrigation season, such amount being conceded to defendant, but based the right on conveyance by deed from a common grantor (deed from A. Wayne Robison and wife to Johnson set forth above), alleged that the defendant at all times by force denied plaintiffs the use of such water, alleged loss of crops by reason thereof to their damage in the sum of $2,000, and prayed for damages and for a decree quieting title to the water claimed by them. The amended complaint was filed before trial and defendants' answer thereto was filed before trial of the cause. No prejudice is alleged or shown in allowing the filing of the second amended complaint or in refusing to strike such pleading. A more liberal rule will be applied in cases where amendments are offered under such circumstances than when offered during or after trial, where the parties may be taken by surprise or handicapped in the meeting of new allegations. The rule, however, is toward liberality in allowance of amendments to pleadings for the purpose of permitting a complete adjudication of the matters in controversy and in the furtherance of justice. The rule is well stated in 49 C. J. 466, as follows:

"Subject to such limitations as arise from the time at which they are sought and from their subject matter, the policy of the law is

toward liberality in the allowance of amendments and to regard them favorably in order that the real controversy between the parties may be presented, their rights determined, and the cause decided on the merits without unnecessary delay, hence, to allow amendments is the rule; to refuse them, the exception. On the other hand it has been said that well-established principles and precedents are not to be lightly set aside, and that amendments are to be allowed in furtherance of justice and not as a reward for indifference or neglect, or where prejudicial to the rights of the adverse party or placing him at an unfair disadvantage. Further, the liberality exercised in allowing amendments is greatest at the time the law suit is commenced and decreases as the suit progresses, and the rule granting amendments changes to the disadvantage of applicant upon each new amendment being allowed."

The issues are not here complicated by any question respecting statute of limitations which might be interposed if the statutory time had run between the time of filing the original complaint and the time of filing the amendment or affecting the time limitation of the right to bring the action as was the case in *Peterson* v. *Union Pac. R. Co.*, 79 Utah 213, 8 P. (2d) 627, 630. In the latter case this court said:

"There is applicable to cases of this kind the rule that a pleading should be liberally construed with a view to substantial justice between the parties, Comp. Laws Utah 1917, § 6596; *Grover* v. *Cash*, 69 Utah 194, 253 P. 676; note, 8 A. L. R. 1406; especially where there is reasonable ground for holding that the amendment is an amplification of allegations already stated, *Clinchfield R. Co.* v. *Dunn* (C. C. A.) 40 F. (2d) 586, 74 A. L. R. 1276, the courts not being disposed to a technical or narrow construction where the transaction alleged in the amendment is the same as in the original complaint, *Texas & P. R. Co.* v. *Cox*, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829."

The complaint was for damages for deprivation of the use of water to which plaintiffs claim they were entitled. The second amended complaint is for the same water, but for an increased amount of damages. In the first complaint plaintiffs claimed under a contract with defendants but under the amendment they claim under a deed from a common grantor, and in the second amended com-

plaint added the prayer to have title quieted. Both pleadings relate to the same subject-matter, the same transaction, and damages for the same wrong. That this is true and that there were uncertainties as to the particular document or writing on which plaintiffs might base their cause of action is illustrated by the fact that the trial court found there was but one agreement which was evidenced by both the contract and the deed. The ultimate single question is the nature and scope of plaintiffs' right to the use of water. The pleadings as now made up include plaintiffs' second amended complaint, which relies on the deed and defendants' answer wherein they rely on the contract. Both were before the court, and it was held that both were necessary to be considered in arriving at the terms and conditions of the agreement between the parties. An examination of the pleadings and the evidence convinces us there is no such departure as would justify this court in reversing the judgment thereby turning the plaintiff out of one door in order that he might enter by another. *Stevens & Wallis* v. *Golden Porphyry Mines Co.*, 81 Utah 414, 18 P. (2d) 903; *Maze* v. *Feuchtwanger*, 106 Wash. 327, 179 P. 850. No substantial rights of defendants were affected. 4 C. J. 943. If plaintiffs are found to be entitled to the water they claim their title should be quieted in them, and if defendants wrongfully deprived them of water, they are entitled to such damages as they may prove. The trial court has a broad discretion in the matter of amendments to pleadings. R. S. Utah 1933, 104-14-4; 49 C. J. 520; *Ganas* v. *Tselos,* 157 Okl. 107, 11 P. (2d) 751; *Mackay* v. *Breeze,* 72 Utah 305, 269 P. 1026; *Peterson* v. *Union Pac. R. Co.,* supra; *Larsen* v. *Gasberg,* 43 Utah 203, 134 P. 885; *Newton* v. *Tracy Loan & Trust Co.,* 88 Utah 547, 40 P. (2d) 204; *Gibson* v. *Equitable Life Assurance Soc.,* 84 Utah 452, 36 P. (2d) 105.

As already stated, plaintiffs rely on the deed from a common grantor as the source of title to the water they claim. Defendants and cross-complainants Hansen likewise rely on

similar deeds to them from the same grantor. Defendant in his answer pleaded the contract of March 3d, ∎ above quoted in full, and relies on its terms as reserving to him such water as is reasonably necessary to irrigate his 80 acres before Johnson or Hansen, or either of them, are entitled to any of the water from the wells. The court did not accept either theory, but combined the two in holding that the contract and the deeds constituted one agreement, and then construed such agreement as limiting defendant to the use of 140 acre feet per season, and Johnson and Hansen each to 96 acre feet per season. We are of the view that the evidence is insufficient to support the findings, that the cause should be remanded for a new trial, and that on such new trial additional evidence should be admitted bearing on the circumstances under which the documents were executed in order to aid the court in an interpretation of their meaning. We are unable to say what the contract means or how it should be interpreted, or whether contract and deed should be considered together as one contract. There is evidence that the parties were present at the time of making the contract of March 3d and the court's finding is that such contract "is in full force and effect, and that it has never been revoked," and also that it is "one of the instruments under which plaintiff Francis W. Johnson and defendant and cross complainant John Hansen acquired their several rights to drill wells and to use the waters," etc. Whether the deeds and contract should be read together as part of one transaction or the deeds read in order to interpret and construe the contract standing alone we cannot say on the record before us. The court should, by evidence of the circumstances surrounding the entering into the agreement, be put in position of the parties so that he may know as much as the parties knew of the subject-matter at the time of the signing of the papers. The court should be placed in a position to see the transaction through the eyes and with the understanding of the parties. *Fox Film Corporation* v. *Ogden Theatre Co.,* 82 Utah 279, 17 P. (2d) 294, 90 A. L. R. 1299. We do not know

whether the deeds were made out before or after the contract was executed, or whether made contemporaneous therewith. The mere fact that they were dated the same day does not furnish this information. Nor do we know whether Brinkerhoff was present or knew of the execution of the deeds to Johnson and Hansen, or was informed of their contents. The deeds were not delivered or placed on record until long afterwards, and it is not shown that Brinkerhoff knew of the existence of either the Johnson or Hansen deed until after the suit was commenced. Whether the contract alone is the binding obligation or if it with the deeds constitutes but one agreement cannot well be determined on the evidence before us or until more is made to appear. On the present record we would be inclined to hold that the contract between the parties is alone the binding obligation, but when we look into the contract its meaning is obscure and not clear. When entered into there was a well on the Brinkerhoff land. What this well flowed, if anything, is not shown. In the contract it is stipulated that Johnson and the other parties of the second part have the right to drill other wells, to deepen the one already drilled, and to have "the use of all developed water over and above a sufficient amount to properly irrigate" the Brinkerhoff land. What is the meaning of developed water? Does this term have reference to all the water that shall in the future flow from all the wells, or does it refer merely to the increase resulting from the drilling activities of the second parties? There is the provision that "in case of shrinkage in water" first parties are to have "all water if necessary up to $1\frac{3}{4}$ acre feet for said land." What did the parties intend by the use of the word "shrinkage"? There are many words in the contract that were used needlessly if all that was meant was that under any and all circumstances Brinkerhoff was to have the use of $1\frac{3}{4}$ acre feet per acre per season but no more. It is clear the parties contemplated developing enough water for all their lands "not to exceed 200 acres in addition" to the 80 acres of Brinkerhoff. Again there is a provision for pumping if the wells should "cease

to flow sufficient to properly irrigate all of said lands." Not anything is said in the testimony or briefs respecting the effect this provision may have on the interpretation of the language of the contract. So far as appears, no pumping has been attempted. If any effect is to be given to the provision that the first parties are to have "a sufficient amount to properly irrigate said land," could it be that first parties are not to be cut down to 1¾ acre feet per acre until after pumping operations have failed to produce enough water to irrigate all the lands or until there is an actual diminution of the water supply below its original flow before such provision is applicable? We cannot say on this record whether there is any actual conflict between the two provisions because it may be that 1¾ acre feet per acre is sufficient to properly irrigate the land. This fact would depend on conditions of soil, climate, crops, slope of the land, and probably other factors. There is no evidence in the record throwing light on this problem. Plaintiffs contented themselves with standing on the terms of the deed. The case was litigated on the theory that the agreement between the parties should be construed in one of two ways; either to limit Brinkerhoff to the use of 1¾ acre feet, or 140 acre feet per season for the whole tract as contended by plaintiffs, or that he was to have the entire present flow from the wells as contended by him.

A fatal defect in the judgment is that it disposes of only 332 out of a total of 411.75 acre feet of water flowing from the wells, leaving 79.75 acre feet of water not disposed of. How is that to be divided? Equally between the parties in proportion to acreage or is it to be divided between Johnson and Hansen to the exclusion of Brinkerhoff? In the findings it is said that Brinkerhoff was to have 140 acre feet per season and no more. Are any other parties interested and entitled to the 79.75 acre feet? The record is silent. Davies, Terry, and Cluff were made parties originally, but were dismissed and not anything appears in the record as to whether either of them claimed to have any interest in the water. If Brinkerhoff, Johnson, and Han-

sen are the only ones having an interest in the water from the wells, the total supply should be allocated among them so as to prevent, if possible, further litigation. It clearly appears from both the contract and deeds that the parties contemplated the use of all the water that could be developed on some sort of a basis, and that it was not contemplated they should be held to a rigid allocation which would limit their use to only 332 acre feet per season. These observations are sufficient to indicate there are latent ambiguities in the agreement which may possibly be cleared up by the introduction of additional evidence. *Egelund* v. *Fayter*, 51 Utah 579, 172 P. 313; 10 R. C. L. 1065.

The assignment of error with respect to damages merely states that there is no competent evidence to justify the decree. This is not a sufficient assignment under the rules of this court. *Townsend* v. *Holbrook*, 89 Utah 147, 56 P. (2d) 610. On a new trial the parties will have ample opportunity to present evidence as to damages.

The last point made by appellant is that this suit cannot be maintained in the face of the arbitration agreement found in the last paragraph of the contract above quoted, where no arbitration was first had. Our statute provides for arbitration of disputes existing at the time the agreement to arbitrate is made which shall be binding on the parties. R. S. Utah 1933, 104-36-1.

The statute, however, does not apply to agreements to arbitrate future disputes. Such agreements are held not to oust the courts of jurisdiction. 2 R. C. L. 360. In *Blodgett Co.* v. *Bebe Co.*, 190 Cal. 665, 214 P. 38, 41, 26 A. L. R. 1070, the court said:

"The rule is that an agreement for the arbitration of any dispute thereafter to arise under a given contract will not be enforced by the courts.* * *

"The provision for arbitration in the case at bar, being one covering all disputes thereafter to arise under the contract, and not being confined to the ascertainment of a fact essential to the existence of the cause of action itself, comes clearly within the general rule that it is not binding upon either party to it."

The agreement here is not such a one as must be performed as a condition precedent to the right of recourse to the courts.

The judgment and decree of the court are set aside and annulled, and the cause remanded for a new trial. Costs to appellant.

ELIAS HANSEN, C. J., and EPHRAIM HANSON and MOFFAT, JJ., concur.

WOLFE, Justice.

I concur. In regard to the contention that there was a change in causes of action, *Stevens & Wallis* v. *Golden Porphyry Mines Co.*, 81 Utah 414, 18 P. (2d) 903, fully controls. In that case the plaintiff sued defendant setting up an oral contract for printing. The proof showed not an oral contract to print a prospectus for the defendant, but a written contract with an entirely different party, one T. Ben Meldrum. Meldrum had a contract with defendant mining company to carry on a selling campaign, and he in execution of his contract ordered the printing from Stevens & Wallis. The mining company had no responsibility for said contract between Meldrum and Stevens & Wallis. But Meldrum, in order to pay his bill to Stevens & Wallis, gave to the latter an assignment of so much of the indebtedness which defendant owed him in order to pay his bill. Thus not a contract between the plaintiff and defendant, but a contract between plaintiff and Meldrum was proved plus an order on the mining company given by Meldrum to the plaintiff to pay over to plaintiff some money owing by defendant to Meldrum. Yet it was held there was no variance. Of course if there was no variance, a fortiori an amendment should have been permitted if requested because if one can allege one thing and prove another, certainly, there could be no objection to permitting an amendment to the pleading before proof so that proof would follow allegation. In the instant case the amendment did not change the cause of action as in the Stevens & Wallis Case. The cause of

action throughout remained the same. In each case it was founded on a claim to water and deprivation of this water by the other. The fact that the matters of inducement, that is, the source by which the water right was attained, was changed, cannot affect the cause of action. I claim to own real estate and allege you are in possession. I may change my allegation as to the means by which I became owner without in the least changing the cause of action. If in the Stevens & Wallis Case this court recognized no change in the cause of action and therefore no variance, certainly in this case, which went little distance as compared to that, there was no departure.