# HARTFORD ACCIDENT & INDEMNITY CO v. CLEGG.

No. 6508. Decided April 7, 1943. (135 P. 2d 919.)

*E. LeRoy Shields* and *A. H. Hougaard,* both of Salt Lake City, for appellant.

*Elias L. Day* and *Arthur E. Morton,* both of Salt Lake City, for respondent.

WOLFE, Chief Justice.

This action, brought by plaintiff Hartford Accident and Indemnity Company against defendant Peter V. Clegg, was founded upon two written contracts. By each contract defendant Clegg agreed, in consideration of the execution of an official bond by plaintiff, to pay plaintiff "any and all loss, costs, charges, suits, damages, counsel fees, and expenses of whatever kind or nature which said company shall or may for any cause at any time, sustain or incur, or be put to, for or by reason or in consequence of said company having entered into or executed said bond; * * *" Defendant Clegg also agreed that the voucher or other evidence of payment, compromise or settlement of any loss, costs, charges, suits, etc., should be prima facie evidence of the fact and the extent of his liability therefor to the plaintiff.

The plaintiff, contending that it sustained and incurred certain losses and expenses by virtue of its undertakings on the bonds executed for and on behalf of the defendant, brings this suit to recover the sums alleged to have been lost and expended by it. From judgment for the plaintiff, defendant appeals.

The essential facts out of which this controversy arose are not in dispute. On January 7, 1929, the defendant was

appointed Treasurer of the Board of Education of Tooele County for a two year term. Defendant's bond, which was fixed at $20,000, was furnished by the plaintiff at his request. At the end of this two year term the defendant was reappointed to succeed himself as treasurer for another two years beginning January 7, 1931. His bond for this term was fixed at $10,000 and it was also furnished by the plaintiff.

During his first term as treasurer of the Board, the defendant received checks for $120,000 and $30,000 from the Tooele County Treasurer. These checks were deposited by the defendant in the Tooele County State Bank on December 24, 1930 to the credit of the Board of Education. Another deposit of $33,448.86 was made to the credit of the Board on January 7, 1931, the first day of defendant's second term as treasurer.

To secure these deposits the defendant required the bank to procure two surety bonds, one for $10,000 and the other for $5,000. These bonds constituted the only depository protection the defendant required the bank to provide. The evidence further shows that he was the assistant cashier of this bank and that his father was the president of the bank during all the periods involved in this suit. The selection of the bank as a depository was made by the defendant in conjunction with the Board of Education.

On January 14, 1931, one week after the commencement of the second term, the bank closed its doors and failed. At that time there was on deposit in the bank to the credit of the Board a total of $141,315.85, all of which had been deposited by the defendant in his capacity as treasurer. Thereafter, the Board brought various court actions in an attempt to save itself from a complete loss of this money. In one suit, brought against the Bank Commissioners, it succeeded in procuring a court decree establishing a trust fund to the extent of $71,985.14. The balance of the deposit was allowed as a common claim against the remaining funds in the hands of the Bank. The Board also recovered a total

of $15,000 on the two aforementioned depository bonds which defendant had required the bank to procure.

In another suit the Board sought to recover from Hartford Accident and Indemnity Company, plaintiff herein, on the $10,000 and the $20,000 bonds executed by plaintiff for and on behalf of defendant Clegg. While this suit was pending in the Federal District Court, a compromise settlement was reached by the Board and the Hartford Accident and Indemnity Co. whereby the Board accepted a total of $14,500 in full settlement of its rights under the said bonds. Defendant Clegg was not a party to that suit nor does it appear that he agreed to the compromise and settlement made. However, he was given written notice by registered mail that the suit was pending and requested to join in the defense of the matter. He failed to reply to the letter or to aid in the defense of the suit.

The suit was brought to recover this $14,500 together with other expenses such as attorney fees and costs incurred in the compromise and settlement of the plaintiff's liability on the $10,000 and $20,000 bond. The original complaint was held bad on demurrer and amended complaint filed. In it the plaintiff alleged the contract which was contained in the application for the $20,000 bond. It further alleged that defendant Clegg wrongfully deposited over $140,000 of the Board's money in the bank without requiring sufficient depository protection; that the bank failed making plaintiff liable to the Board on its $20,000 bond; that the Board previously had brought suit against plaintiff to recoved on both the $20,000 and the $10,000 bonds; and that in compromise and settlement of that suit plaintiff paid to the Board $14,500 and incurred other specifically pleaded expenses. It is important to an understanding of defendant's contentions to note that neither the original nor first amended complaint alleged the execution of the $10,000 bond or any other facts concerning it except the allegation that plaintiff paid $14,500 in settlement of its liability on both the $10,000 and the $20,000 bonds.

The defendant joined issue on this first amended complaint and denied that the plaintiff was under any obligation on either bond to make any payment to the Board of Education because of the fact that defendant Clegg had complied strictly with all his duties. In further answer defendant alleged that if any default had occurred on his part, it occurred while only the $10,000 bond was in effect. He also alleged the execution of this $10,000 bond. After trial the judge made a minute entry as follows:

"The within entitled matter having been by the court taken under advisement, the court now renders its decision that judgment be entered against the plaintiff and in favor of the defendant."

Thereafter, plaintiff made motion to amend its complaint, which motion, over defendant's objection, was granted by the trial court. A second amended complaint was filed and a demurrer to it was sustained. Demurrers to the third amended complaint which was filed were also sustained. The fourth amended complaint, which was filed, sought recovery of $14,500 on theory of equitable subrogation and also alleged the contract contained in the application for both the $10,000 and the $20,000 bonds. After trial the court held that there was no liability on principles of equitable subrogation or on the $20,000 bond but allowed recovery on the $10,000 bond on the theory that the defendant's default occurred during the life of this bond. It also allowed recovery of all expenses incurred in the compromise and settlement effected by plaintiff with the Board of Education.

In assailing this judgment defendant makes 23 assignments of error. He urges first that the minute order entered by the trial judge constituted a final judgment in favor of the plaintiff and that it was error to permit an amendment without first setting this judgment aside. However, there was no error in this regard for the minute order was not a final judgment. It did not purport to finally adjudicate the rights of the parties. It was neither a judgment of dismissal nor a judgment on the merits for

the defendant. No provision was made for awarding of costs and it is obvious that something more was contemplated by the court. It was not supported by findings of fact and conclusions of law as we have consistently held that it must be to constitute a final judgment on the merits. *Wayland* v. *Woolley*, 61 Utah 287, 213 P. 200; *Emerson-Brantingham Imp. Co.* v. *Stringfellow*, 57 Utah 284, 194 P. 340. It must appear that that "which is offered as the record of a judgment is really such and not an order for a judgment or a mere memorandum from which the judgment was to be drawn." 33 C. J. 1190. This rule is in accord with the holding of this court in *Lukich* v. *Utah Construction Co.*, 46 Utah 317, 150 P. 298. See also *Day* v. *Mills*, 213 Mass. 585, 100 N. E. 1113, where the court held that a docket entry or an order for such entry was not a final decree.

The defendant's second contention is that the issue of his liability under the contract for subrogation contained in his application for the $10,000 bond is a matter which should have ben litigated in the trial which resulted in the entry of the minute order and hence must be considered foreclosed on the principles of res adjudicata. Our holding that the minute order did not constitute a final judgment disposes of this contention. This conclusion is inevitable, for since no final judgment had been entered in regards to any of these matters when the fourth amended complaint was filed, the issues therein raised had not been adjudicated and could not be considered res adjudicata.

The third contention, that the court erroneously allowed plaintiff to amend to state an entirely new cause of action raises a more difficult problem. The original complaint was based on the defendant's undertaking in regards to the $20,000 bond. It did not allege, and at the first trial plaintiff did not urge, defendant's liability in regard to the $10,000 bond. The court allowed plaintiff to amend to base its claim on the theory of equitable subroga-

tion and on the undertakings of the defendant in regard to *both* the $10,000 and the $20,000 bonds. It is well established, as defendant contends, that the power of the court to permit an amendment of the pleadings does not extend so far as to permit the importation of an entirely new and different cause of action. *Grover* v. *Cash,* 69 Utah 194, 253 P. 676; *Combined Metals, Inc.,* v. *Bastian,* 71 Utah 535, 267 P. 1020; *Peterson* v. *Union Pac. R. Co.,* 79 Utah 213, 8 P. 2d 627; *Newton* v. *Tracy Loan & Trust Co.,* 88 Utah 547, 40 P. 2d 204.

However, the rule that a new or different cause of action cannot be introduced by amendment cannot be taken literally. As pointed out by the California Supreme Court in a recent case, *Klopstock* v. *Superior Court,* 17 Cal. 2d 13, 108 P. 2d 906, 910, 135 A. L. R. 318:

> "It is obvious that the unqualified way in which the rule is sometimes stated \* \* \* cannot be accepted; for the most common kinds of amendments are those in which complaints are amended that do not state facts sufficient to constitute a cause of action, and in these, and often in the case of new parties, a *new* cause of action is in fact for the first time introduced. All that can be required, therefore (to use the language of Mr. Pomeroy), is that 'a wholly *different* cause of action' shall not be introduced." (Italics added.)

In *United States* v. *Memphis Cotton Oil Co.,* 288 U. S. 62, 53 S. Ct. 278, 280, 77 L. Ed. 619, Cardozo, J,. states that the term "cause of action" "may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principal of res judicata." He continues with an enumeration of other phases of the term.

Courts have been particularly liberal in their construction of the term "cause of action" as it relates to the question of whether or not a new cause of action has been introduced by an amendment to pleadings. We have ■ consistently encouraged all proper amendments to pleadings to the end of having a full hearing on the merits

of the entire controversy. *Hancock* v. *Luke,* 46 Utah 26, 148 P. 452; *Harman* v. *Yeager,* 100 Utah 30, 110 P. 2d 352. This trend toward a liberal construction of the term is looked upon with favor in other jurisdictions. In *Klopstock* v. *Superior Court,* supra, the court stated in this regard:

"In determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated. As the court says in the Frost case, supra [*Frost* v. *Witter*], 132 Cal. [421], page 426, 64 P. [705], page 707, 84 Am. St. Rep. 53, for the purpose of determining whether amendment is possible, the 'cause of action' referred to as furnishing the test means only the legal obligation which it is sought to enforce against the defendant. Other courts have used almost identical language; the test is not whether under technical rules of pleading a *new cause of action is introduced,* but rather, the test is whether an attempt is made to state facts which give rise to a *wholly distinct and different* legal obligation against the defendant. The power to permit amendment is denied only if a change is made in the liability sought to be enforced against the defendant. See *Harriss* v. *Tams,* 258 N. Y. 229, 242, 179 N. E. 476." (Italics added.)

The liberal construction is further illustrated by a recent Oregon case *Elliott* v. *Mosgrove,* 162 Or. 507, 91 P. 2d 852, 93 P. 2d 1070, 1072, where the court makes a thorough analysis of the different concepts of the term "cause of action." The court quotes with approval from a law review article (33 Yale L. Journal 817) written by Judge Clark (author of Clark on Code Pleading) as follows:

" 'The cause of action under the code should be viewed as an aggregate of operative facts which give rise to one or more relations of right-duty between two or more persons. The size of such aggregate should be worked out in each case pragmatically with an idea of securing convenient and efficient dispatch of trial business.' He suggests: 'It seems that a single cause may give rise to innumerable rights. And the extent of our cause and the number of persons it may affect must be determined having in mind our main purpose, above referred to—convenient, efficient trial work. So our cause should be as extensive a history as we can conveniently and efficiently handle as a single unit, and without injury to substantive rights.' "

The court later states:

"Courts which are not over-attentive to the ancient common law forms of action, and which view the process of framing the issues, not as mere application of dry formulaes, but as a practical means whereby the controversy between the parties may be ascertained and stated in convenient form for judicial attention, experience no difficulty in the application of Judges Phillips' and Clark's definition of a cause of action. They regard the term 'cause of action' as one which is broadly descriptive, and deem that its use is purely practical."

In *Pritchard* v. *Norfolk Southern Ry. Co.*, 166 N. C. 532, 82 S. E. 875, 876, this same question was raised. The court there stated:

"We are of opinion that the filing of the amended complaint was a matter in the discretion of the court, and that, while it is practically an additional cause of action, it is so germane to the original cause of action that both may be considered in one action."

As viewed in the broader aspect this was but one series of transactions. The defendant argued strenuously in the court below and again here on appeal that this entire matter is so interrelated that plaintiff was required to plead both contracts in one action to avoid having the one not pleaded barred by principles of res adjudicata. It is upon this that he bases his second contention discussed above. The facts which would be adduced to show a breach of either contract would to a certain extent also be competent to show the breach of the other. The dereliction of the defendant had to be alleged in almost the identical manner in regards to both contracts. The causes would have been properly joinable in the first instance and the defendant was not in any way misled. Nor has it in any way interfered with defendant's substantive rights. It enabled the court to settle an entire controversy and is in accord with the modern trend expressed in the cases cited above, which hold that the term "cause of action" when used in this regard is broadly descriptive, its use purely practical, and its bounds as extensive as can be conveniently and efficient handled as a single unit without injury to

sustantive rights. Further, the court correctly protected the defendant's rights by giving him ample time to meet the new matter and awarding him costs. There was no error in this regard. This holding accords with trend expressed in several Utah cases which announce a policy of allowing amendments to pleadings for purposes of permitting complete adjudication of matters in controversy, i.e. to permit disposition of the case on its facts rather than on its pleadings. See *Johnson* v. *Brinkerhoff,* 89 Utah 530, 57 P. 2d 1132; *Stevens & Wallis* v. *Golden Prophyry Mines Co.,* 81 Utah 414, 18 P. 2d 903; *Harman* v. *Yeager,* 100 Utah 30, 110 P. 2d 352. It did not introduce an entirely different legal obligation. In the larger sense as herein used, the term "cause of action" is somewhat akin in meaning to the term "cause for the action." The cause for this action arose out of one series of transactions all so interrelated as to be most conveniently tried together as one unit. Fundamentally, plaintiff seeks to recover money expended in discharge of its liability as surety for the defendant, which expenditures were occasioned by the wrongful deposit of money in a bank without suffient depository insurance and the failure of the bank. It should make no difference that defendant's duty arose out of one interrelated series of transactions rather than out of one single transaction.

For the most part the remaining assignments of error are bottomed on the three contentions of the defendant discussed above. In view of our decision in regards to these contentions, these other assignments need not be further analyzed. However, there are several assignments, not related to the matters discussed above, which warrant further attention.

In assignment of Error No. 15, appellant contends that he should have been allowed credit for the sum of $1,588.75, received by the plaintiff by way of dividends from the liquidator of the insolvent bank, following the time that the School Board was first made whole. The plaintiff admits that defendant is entitled to this credit as of the

date of payment thereof to the Board of Education on December 1st, 1940, following the institution of this suit. The judgment of the court should give defendant credit for this amount.

In assignment No. 13 defendant contends that the contract of subrogation upon which suit was brought was contained in the application for each bond and that there is no evidence that any application was ever made for the $10,000 bond. In assignment No. 20 defendant contends that the court erred in admitting in evidence over defendant's objection plaintiff's exhibit "M" which purported to be an application for the $10,000 bond. It is true that the subrogation contract relating to the execution of both bonds was contained in the applications therefor and not in the bonds themselves. But the evidence conclusively shows that at the end of defendant's first term, he applied for a new bond which had been tentatively set by the Board at $20,000. This application was introduced in evidence by plaintiff as exhibit "M". The evidence further shows that after the application for the second bond had been made by defendant, the Board reduced the bond from $20,000 to $10,000. The parties treated this application, plaintiff's exhibit "M", as an application for the $10,000 bond and the number on the application (970048) is the same number as that carried by the bond issued pursuant thereto. There was no error in this regard.

The defendant further contends that the court erred in entering judgment against defendant for all costs incurred in the Federal District Court suit by the plaintiff in the compromise and settlement of its liability on the $20,000 and $10,000 bond. The court found that defendant was not liable under the $20,000 bond nor on principles of equitable subrogation but allowed recovery on the third cause of action which was based on the application for the $10,000 bond. It also held plaintiff was entitled to judgment against defendant for sum of $2,688 as attorney fees and costs by reason of expenditures made to settle

liability on both the $20,000 and the $10,000 bond. It is defendant's contention that the evidence shows that this $2,688 was expended entirely in connection with the $20,000 bond and had no reference to or connection with the $10,000 bond. However, it appears from the evidence quite conclusively that the costs were incurred in the compromise and settlement of plaintiff's liability under both bonds. It would have been incorrect for the court to hold that the expenditures were made entirely on either bond. By the contracts contained in the applications for the bonds, he agreed to reimburse plaintiff for all costs and expenses incurred in defending or compromising claims based on plaintiff's liability on these bonds. Even if the trial court were correct in its holding that the plaintiff was not liable on the $20,000 bond, the defendant would still be required by the contract in the application for the $20,000 bond to pay all costs incurred by the plaintiff in defending suits brought on the said bond. The court correctly so held. Since defendant was liable to the plaintiff for the entire $2,688 there could have been no prejudice in the court's refusal to compel plaintiff to segregate the amount expended with respect to each bond.

We have examined the other assignments of the defendant and find no prejudicial error in respect to any of them.

The plaintiff has made certain cross-assignments of error under which it urges that the court erred in its holding that defendant was not also liable under the $20,000 bond. Plaintiff treats these cross-assignments as if they constituted a cross appeal and urges this court to set the judgment of the lower court aside and enter judgment for the full $14,500. However, in *Jensen* v. *Utah Railway Co.*, 72 Utah 366, at page 398, 270 P. 349, at page 361, we stated:

"This court, in a number of cases, considering the purpose and function of cross-assignments has held that cross-assignments cannot avail the respondent to have the record reviewed, to afford him a modification of the judgment or any affirmative relief, and that to review a rec-

ord for such purpose, and to grant such relief, a cross-appeal is essential, and assignments made thereon in the same manner as on the appeal by the appellant, and that cross-assignments perform the office and function of only defending and upholding the judgment.

The court cites numerous cases in support of this proposition. See also *Petty* v. *Clark*, 102 Utah 186, 129 P. 2d 568. Since we have upheld the judgment of the lower court it is not necessary to consider any matters raised by the cross-assignments. No affirmative relief can be granted to respondent, even if he were entitled to such, because no cross-appeal has been filed.

The judgment of the lower court should be modified to give the defendant credit for the $1,588.75 which was paid by the liquidator of the bank to plaintiff. With this modification the judgment of the lower court is affirmed. Costs to respondent.

LARSON, McDONOUGH, and MOFFAT, JJ., concur.

WADE, Justice (concurring).

I will discuss only the question of when amendments should be allowed. I agree that amendments should be liberally allowed in the interest of justice whenever it will aid in settling an entire controversy. The limitations thereon should be whether the matters involved are such as can be conveniently and effectively handled in one trial without injury to substantive rights. In this case the amendment was properly allowed.

As stated in the main opinion, this court has often said that an amendment will not be permitted which imports an entirely new and different cause of action, but in practice we have not always adhered to that rule. In *Hayden* v. *Collins*, 90 Utah 238, 63 P. 2d 223, we expressly allowed an amendment to the answer which introduced a new cause of action. In *Johnson* v. *Brinkerhoff*, 89 Utah 530, 57 P. 2d 1132, we allowed the plaintiff whose original complaint based his claim on a contract between plaintiff and de-

fendant to file an amended complaint basing the same claim on a deed from a common grantor, thus relying on an entirely different instrument. To my mind, such an amendment, as well as the amendment which we are allowing in this case, under the great weight of authority, would amount to the importation of an entirely new and different cause of action. Pomeroy's Code Remedies, 4th Ed., Sec. 457, *566.

Although we have often held the rule to be as stated above, my research has only disclosed one case in which we have refused to allow an amendment on the ground that it would import an entirely new and different cause of action. See *Combined Metals, Inc.*, v. *Bastian*, 71 Utah 535, 267 P. 1020. I believe that case to be in conflict with *Johnson* v. *Brinkerhoff*, supra, and with the present case. The term "cause of action" is used with many different meanings. *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 53 S. Ct. 278, 280, 77 L. Ed. 619. Such a term leads to confusion rather than clearness of thought. Inherently, in order to efficiently handle the business of the courts and in the furtherance of justice there should be a liberal allowance of amendments. Some states have refused to adopt or follow the rule that a new cause of action may not be imported. *Brown* v. *Leigh*, 49 N. Y. 78, 12 Abb. Prac., N. S., 193; also see cases cited and discussed by Pomeroy cited above. Other states have enlarged the meaning of the term "cause of action" in order to reach the same result. See *Elliott* v. *Mosgrove*, 162 Or. 507, 91 P. 2d 852, 93 P. 2d 1070. The Oregon statute permits the court to allow amendments which "does not substantially change the cause of action," Code Or. 1930, § 1-906, thus it was necessary for the court to construe that term. Our statute contains no such provision or limitation. The only limitation which our statute places on the power of the court to allow amendments is that they must be allowed on "such terms as may be just," or "in furtherance of justice." Sections 104-14-1, 2, 3 and 4, Utah Code Annotated 1943. The rule would be much

more definite and understandable if we omitted from consideration entirely the question of whether a new cause of action had been imported, rather than to enlarge the meaning of the term "cause of action."