LINDON CITY, Plaintiff and Appellant,

v.

ENGINEERS CONSTRUCTION CO., a corporation, Defendant and Respondent.

No. 17141.

Supreme Court of Utah.

Sept. 21, 1981.

Jackson Howard, John R. Merkling, Provo, for plaintiff and appellant.

Robert J. Dahl, Robert F. Babcock, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

This is an appeal from the dismissal of a complaint seeking a declaratory judgment as to rights and obligations of the litigants under a contract that included provisions calling for arbitration of any disputes that might arise out of the contract. The contract was for construction of a facility for the plaintiff, Lindon City, and resulted after the defendant, Engineers Construction, was the low bidder on an advertised invitation for bids. Both parties agreed to the arbitration by the designated American Arbitration Association. The entire contract was prepared by the City and the arbitration provision was a condition necessary to bind the parties to its terms.

Two disputes did arise: one as to the rate of interest on delinquent contract payments, and the other as to whether there had been a "final payment" by check that did not include the disputed interest.

Engineers claimed that payment had not been made, and requested and gave notice for arbitration according to the contract's terms. Before the date of hearing, the City refused to arbitrate and filed this suit for declaratory judgment.

The contract provisions that are of vital concern in resolving this litigation are reproduced as follows:

Section 30.1. All claims, disputes and other matters in question arising out of, or relating to, the CONTRACT DOCUMENTS or the breach thereof, except for claims which have been waived by the making and acceptance of final payment as provided by Section 20, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.

Section 19.6 If the OWNER fails to make payment 30 days after approval by the ENGINEER, in addition to other remedies available to the CONTRACTOR, there shall be added to each such payment interest at the maximum legal rate commencing on the first day after said payment is due and continuing until the payment is received by the CONTRACTOR.

Section 20.1 The acceptance by the CONTRACTOR of final payment shall be and shall operate as a release to the OWNER of all claims and all liability to the CONTRACTOR . . . .

▆ It would appear that the "disputes" mentioned above are particularly suited and designed for determination by arbitration by the very provisions insisted upon by the City for inclusion in the very contract it drafted and required as a condition for acceptance of bids. If not so intended to be arbitrable, it is suggested that few, if any, situations or "disputes" would survive for arbitration under such a superficial conclusion. We are of the opinion that a claim, followed by denial of the interest agreed upon and whether final payment under the contract had been made, are "disputes" under the plain, clear wording of the contract provisions set out above, and we so hold.

▆ The only question, therefore, is whether the plaintiff City was premature in filing for declaratory judgment—not whether such a suit is impermissible under any circumstances because of the arbitration agreement. We are convinced that before the plaintiff filed this suit, it was bound by its promise, first, to seek arbitration, then to litigate, if it could under its contract, or under either the Arbitration Act[1] or the Declaratory Judgment Act.[2]

The plaintiff asserts that the trial court held that it had no "standing" in court, while defendant contends the trial court held the suit to be "premature." The statements of the court indicate that it adjudged that the suit was premature. Whatever term is or was used, it connotes the conclusion that in any event the parties covenanted to arbitrate first; otherwise, the provisions therefor would make no sense. There is no question before this Court as to filing suit after arbitration failed, and therefore we need not discuss it except to say that, in fact, the Arbitration Act itself provides for such litigation in U.C.A., 1953, 78–31–13:

The arbitrators may on their own motion, and shall by request of a party to the arbitration:

(1) At any stage of the proceedings submit any question of law arising in the course of the hearing for the opinion of the court, stating the facts upon which the question arises, and such opinion when given shall bind the arbitrators in the making of their award.

(2) State their final award, in the form of findings of fact, for the opinion of the court on the questions of law arising on the hearing.

The trial court decided the suit was premature, as do we. Resort to the arbitration process has not been had, as agreed, and the arguments as to what the declaratory judgment says or does, are not germane here. Neither are those touching the jurisdiction of the arbitrator or issues determinable by the arbitrator in the first instance, such as "future" versus "present" disputes, whether the contract complies with the Arbitration Act, and whether the 1977 amendment to the Act or its predecessor prevailed. The decision of the trial court cannot be interpreted other than to say that none of the above matters can properly be heard by the court prior to arbitration.

▆ As to whether the content of a contract is arbitrable, doubts should be resolved in favor of the parties' freedom to

1. U.C.A., 1953, 78–31–1, *et seq.*

2. U.C.A., 1953, 78–33–1, *et seq.*

contract.[3]  As was stated in *King County v. Boeing Company* : [4]

Arbitration is a contractual remedy for the settlement of disputes by extrajudicial means.  It is a remedy freely bargained for by the parties, and "provides a means of giving effect to the intention of the parties, easing court congestion, and providing a method more expeditious and less expensive for the resolution of disputes."  There is a strong public policy in favor of such a remedy, but it should not be invoked to resolve disputes that the parties have not agreed to arbitrate.

\*　　\*　　\*　　\*　　\*　　\*

Arbitration clauses should be liberally interpreted when the issue contested is the scope of the clause.  If the scope of an arbitration clause is debatable or reasonably in doubt, the clause should be construed in favor of arbitration unless it can be said that it is not susceptible to an interpretation that covers the asserted dispute. . . .  If an arbitrable issue exists, the parties should not be deprived of the benefits of the agreement for which they bargained.  [Citations omitted.] [5]

There is nothing in the contract here that is unclear, ambiguous or vague, and even if there were, the parties have agreed to arbitrate such things first.  There is nothing in the contract that an average, literate person would not be able to read and interpret such as to demand a judge's decision rather than a competent arbitrator.

■ The purpose of the Declaratory Judgment Act [6] is to permit examination of legal documents and statutes to determine questions of "construction or validity" arising under such instruments.  There is no reason, however, why an arbiter appointed and authorized consensually by the parties cannot examine such instruments for the same reasons, as a condition precedent to a formal lawsuit.[7]

■ There appears to be no "public policy" or other good reason why persons effectively and by contract, should not be able to agree to an out-of-court settlement.  It is accomplished frequently by stipulation, binding concessions, accord and satisfaction, covenant not to sue, by indemnity contract, and by other honorable and legal means.

The trend toward such *inter se* agreements without resort to litigation, reflects a good, practical way to resolve disputes.  This very case appears to be a typical example of such attempted avoidance of the cost and protraction this case itself already has engendered.  It would appear that in this case the City may have sought lower construction costs and Engineers, a more remunerative margin of profit, by entertaining the arbitration process.

Plaintiff's remaining point on appeal challenges the constitutionality of the Arbitration Act, which permits the parties to "[a]gree to submit to arbitration any controversy which may arise in the future."  We note at the outset that 1) plaintiff does not support the point by any substantial meritorious argument, and 2) that many of our sister state courts have held similar acts to be constitutional.

Without satisfactory proof otherwise, constitutionality is generally presumed.[8]  In *Branch v. Salt Lake County*,[9] the Court held as follows:

The first legal principle to be observed is that there is a presumption that a statute is valid and constitutional; and one who questions it has the burden of convincing this court of its unconstitutionality.

**3.** *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

**4.** 18 Wash.App. 595, 570 P.2d 713 (1977).

**5.** 570 P.2d at pp. 717–718.

**6.** *Supra*, note 2.

**7.** *Gary Excavating v. Town of North Haven*, 164 Conn. 119, 318 A.2d 84 (1972); *Ozdeger v. Altay*, 66 Ill.App.3d 629, 23 Ill.Dec. 446, 384 N.E.2d 82 (1978).

**8.** *Washington County v. State Tax Commission*, 103 Utah 73, 133 P.2d 564 (1943).

**9.** 23 Utah 2d 181, 460 P.2d 814 (1969).

Plaintiff contends the amendment violates Article I, Section 11 [10] and Article I, Section 7 [11] of the Constitution of Utah. Plaintiff further argues that the application of the amendment to a party that is a municipal corporation violates Article VI, Section 28 of the Constitution of Utah.[12]

Under Article I, Section 11, a party may intentionally and deliberately waive the ordinary and usual remedy to which a party is entitled for the redress of a wrong, but such waiver should be expressed in the most unequivocal terms.[13] Although *Barnhart v. Civil Service Employees Insurance Company* [14] alludes to this constitutional revision, this Court has consistently ruled that an agreement to arbitrate future disputes was enforceable for reasons of public policy. In *Johnson v. Brinkerhoff*,[15] this Court stated that the Utah statute (R.S. Utah 1933, 104–36–1) did not apply to agreements to arbitrate future disputes, and that such agreements were held to oust the courts of jurisdiction.[16]

In *Latter v. Holsum Bread Co.*,[17] this Court ruled that in the absence of a statute to the contrary, an agreement to arbitrate future disputes was unenforceable on the ground that it denied to the parties judicial remedies and was, therefore, contrary to public policy. In a concurring opinion, Justice Wolfe stated that public policy was what the legislature declared it to be; and although the rule that commercial arbitration contracts were against public policy had long been criticized, it was too firmly imbedded to be overturned without legislation. In the *Barnhart* case,[18] this Court held that inasmuch as the legislature had not amended the arbitration statute, we would adhere to the law as previously established and would decline to enforce an agreement for arbitration of controversies which might arise in the future. In two concurring opinions, Justices Henriod and McDonough expressed the view that there was no reason parties should not be able to enter freely and voluntarily into a binding arbitration agreement, but it was the prerogative of the legislature to amend the statute to so provide. The legislature responded to the clarion opinions expressed by members of this Court and amended the statute to permit valid and enforceable agreements for arbitration of future disputes. This amendment does not violate Article I, Section 11, Constitution of Utah.

Plaintiff contends the amendment violates the due process clause of Article I, Section 7, Constitution of Utah. Such an argument is not persuasive. In *Christiansen v. Harris*,[19] this Court observed that due process of law does not necessarily require judicial action. The purposes of the law, especially as to property, may be effected

10. "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

11. "No person shall be deprived of life, liberty or property, without due process of law."

12. "The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, ... or to perform any municipal functions."

13. *Bracken v. Dahle*, 68 Utah 486, 499, 251 P. 16 (1926).

14. 16 Utah 2d 223, 398 P.2d 873 (1965).

15. 89 Utah 530, 544, 57 P.2d 1132 (1936).

16. Such a phrase and the ensuing rule of law have been subject to some ridicule, 6A Corbin on Contracts, Sec. 1431, p. 381. An agreement to arbitrate future disputes has no effect upon the jurisdiction of the court, although it may affect the court's action. Arbitration removes the controversy from the area of litigation. It is no more an ouster of judicial jurisdiction than a compromise and settlement or a covenant not to sue, each of which disposes of issues without litigation. *Id.*, Sec. 1432, p. 383.

17. 108 Utah 364, 368, 160 P.2d 421 (1945).

18. *Supra*, note 14.

19. 109 Utah 1, 7, 163 P.2d 314 (1945).

by executive or administrative action, and still be valid if they meet the requirements of due process. The requirements are "that no party can be affected by such action, until his legal rights have been the subject of an inquiry by a person or body authorized by law to determine such rights, of which inquiry the party has due notice, and at which he had an opportunity to be heard and to give evidence as to his rights or defenses."

 A survey of Chapter 31, Title 78 reveals that the Arbitration Act more than fulfills all these requirements. In addition, there are provisions for action by the courts to affirm, modify, correct or vacate an award.

Finally, plaintiff claims that the 1977 amendment violated the proscription of Article VI, Section 28 as a delegation to a special commission of a municipal function. Specifically, plaintiff argues that to enforce the binding arbitration clause it included in the contract would be tantamount to subjecting a municipal corporation to the interest of a group antagonistic to the public with no responsibility to the public.

Absent a statutory prohibition, a municipal corporation has the power to submit to arbitration any claim asserted by or against it. This power is based on the right to contract and the right to maintain and defend suits.[20] The arbitration clause in the instant case did not involve a delegation of unlimited discretion to an ad hoc panel of private persons to make basic governmental policy.[21] The contract specified the rights and duties of both parties, and the arbitration clause applied only to disputes about compliance with terms fixed by the contract. Such a clause was not an abdication of the municipality's duties towards new matters which might arise in the future,

but only constituted a present agreement that disputes which might arise under the contract would be arbitrated.[22] We therefore conclude and hold that the Arbitration Act is constitutional.[23]

The judgment is affirmed with costs to respondent.

STEWART, HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

---

20. 20 A.L.R.3d 569, Anno.: Power of municipal corporation to submit to arbitration, Sec. 2(a), pp. 572–574; Sec. 4(a), pp. 579–582.

21. Compare *Salt Lake City v. International Association of Firefighters*, Utah, 563 P.2d 786 (1977).

22. *City of Madison v. Frank Lloyd Wright Foundation*, 20 Wis.2d 361, 122 N.W.2d 409, 416–418, 20 A.L.R.3d 545 (1963).

23. See annotation in 55 A.L.R.2d 432 in support of this conclusion. See also, *Berkowitz v. Arbib*, 230 N.Y. 261, 130 N.E. 288 (1921).