LOUISA PEARSON, as Administratrix of the Estate of MARTIN PEARSON, Deceased, Respondent, v. T. E. ANDERBURG, ANDREW ANDERSON, JOHN ALLSOP, JOSEPH BURKINSHAW, J. A. BUTLER, JOHN BAKER, CHARLES CUSHING, A. J. CUSHING, JAMES M. CUSHING, D. A. DROWN, R. GARRATT, ORLANDER HARDCASTLE, EMIL HARTVICKSON, JOSEPH HEIMRICK, JULIUS HEUSSER, P. O. HAMMER, H. P. JOHNSON, JAMES LANE, OLAF LARSON, JOHN LATIMER, T. E. MARRIOTT, GEORGE MARRIOTT, PETER NICKELS, C. F. NELSON, JAMES NELSON, D. L. PENROD, ARTHUR PERRY, JOHN RIDEOUT, D. E. RIDEOUT, JR., A. G. ROBERTSON, A. STUART, W. T. VINCENT, T. L. WILLETT, WM. R. SOFFE, DAVID SHIELDS, and JOHN MARRIOTT, Appellants.

No. 1574.    (80 Pac. 307.)

1. **Insurance: Sick Benefits: Actions to Recover: Survivorship.**

    A cause of action in favor of a member of a beneficial association to recover sick benefits payable to him during his lifetime survives his death, and may be brought by his administrator.

2. **Same: Funeral Expenses: Right of Action.**

    An administrator of a deceased member of a beneficial association may recover an allowance for funeral expenses provided for by the laws of the association, but which are not declared payable to any particular person.

3. **Same: Action: Parties: Unincorporated Beneficial Association.**

Where a complainant, naming as defendants the individual members of an unincorporated beneficial association alleged, and the evidence showed, that the association as such had trust funds in its possession, which were collected from its members to pay obligations of the character of the one in suit, and it was sought to subject those funds to the payment of such obligation, and the judgment as entered could only be satisfied out of the property of the association, the proceedings were not subject to the objection of attempting to hold the members of the association personally liable for the association's debts.

4. **Same.**

A voluntary association cannot be sued in its name as such, but can be brought into court only in the name of its members, or, if they are too numerous, a few of them may be made defendants to represent the interests of all.

5. **Same: Restriction of Actions: Tribunals of Order.**

While members of a voluntary association may restrict themselves as to matters incidental to the operation of the association to remedies before tribunals created by the association, such restriction cannot extend to the right to benefits due the members under contract with the association, so as to require them to exhaust the remedy provided by the tribunals of the association as a condition precedent to suing for such benefits.[1]

6. **Same: Irregularities of Proceedings.**

The action of a beneficial association, which knew of the illness and mental derangement of a member, in dropping such member from its rolls without his knowledge or consent, and without representation or hearing, because of his failure to pay dues during a time when it failed to pay the sick benefits to which he was entitled, was so irregular as to be grossly unjust, and did not preclude the member's personal representative from. suing to recover the benefits notwithstanding a stipulation of the contract of membership requiring the member to submit his grievances to the tribunals of the association without resorting to the courts.

7. **Same: Forfeiture: Estoppel.**

A beneficial association, which, with knowledge of the sickness and mental derangement of a member, accepted arrearages

---

[1] Daniher v. Grand Lodge A. O. U. W., 10 Utah, 110, 37 Pac. 245.

of dues which placed him in good financial standing, and received monthly dues for six months thereafter, was estopped to insist on a forfeiture on account of such arrearages.

(Decided March 20, 1905.)

Appeal from the Third District Court, Salt Lake County.—*Hon. T. W. Stewart,* Judge.

Action to recover sick benefits. From a judgment in favor of the plaintiff, the defendants appealed.

MODIFIED AND AFFIRMED.

*S. W. Darke, Esq.,* and *E. D. Hoge, Esq.,* for appellants.

*Messrs. Frick & Edwards* for respondent.

STRAUP, J.—Defendants are members of a voluntary association known as and called "Sandy Lodge, No. 11, I. O. O. F., Sandy, Utah." One Martin Pearson was a member of said lodge from 1888, and, as claimed by the plaintiff, up to the time of his death, which occurred in May, 1901. Plaintiff, the widow and only heir of said deceased, was appointed administratrix of his estate, and, as such, brought and maintained this action against the said defendants, as members of said lodge, to recover sick benefits due the said deceased during his lifetime, from July 1, 1898, up to the time of his death, and for $75 funeral expenses. The case was tried before the court without a jury. Plaintiff had judgment, and defendants appeal.

It is urged by appellants that the plaintiff, in her capacity as administratrix, had no right to maintain the action. Under the laws, rules, and regulations of the lodge, the sick benefits, if at all, were due and owing

the deceased, and were payable to him during his lifetime. They were not benefits due or payable to the widow or the family, or benefits due arising after the death of the said deceased. The deceased, had he lived, could have maintained an action therefor. The action did not abate by his death. The laws of the society provided, "In case of the death of a brother qualified to receive benefits, there shall be allowed as funeral expenses the sum of $75.00." Appellants admit the laws of the society are silent as to whom this shall be paid. While they assert the plaintiff, as administratrix, cannot sue therefor, and assert "neither the widow, heirs, nor any other person are mentioned as being entitled to benefits or funeral expenses," no assertion or claim is made by them as to who may demand or sue for the same. Because not being provided to whom the said expenses shall be paid, it did not preclude the administratrix suing for them. Bishop v. Grand Lodge (N. Y. ), 20 N. E. 562. The action was, therefore, properly brought by and in the name of the personal representative.

It is urged that, inasmuch as the society was a voluntary association, the members thereof are not personally liable for the debts of the association. Many cases are cited holding that a member of an unincorporated social club, lodge, fraternal society, etc., is not liable for the debts or obligations of the society, unless it be shown in some way he had sanctioned or made himself liable. This may all be conceded. The action, however, was not brought or tried, nor was judgment rendered, upon any theory of law that the members were so personally liable. It was alleged in the complaint, and the evidence shows, that the association, as such, had trust funds in its possession and under its control which were collected and received by it from its members to meet and pay such like debts and obligations as this one. The action was not one seeking to obtain a personal judgment against these defendants, or to make them personally liable for

the debt sued for, or to satisfy the same out of their private property, but seeking to have paid and have satisfied the debt out of the said trust funds and property of the association. And the judgment, as entered, is not such whereby it may or can be satisfied out of the private property of the defendants, or any one of them. The judgment, as entered, can only reach the property of the association, and control the actions of the defendants as members thereof in respect thereto. Plaintiff could not have commenced and maintained this action against the association in its name, for a voluntary association can neither sue nor be sued in such way, but the only way to bring the association before the court is in the name of the members composing it, who are the proper parties. This may be done by making all the members or only part of them parties. "If the members of a society are so numerous that they cannot be made parties to a cause with any chance of bringing it to a hearing, in consequence of abatements and like difficulties, suit may be brought in the name of one or more for the use of all, or two or three members may be made defendants to represent the interests of all." Niblack, Ben. Soc., pp. 181-183; Dicey, Parties to Actions, pp. 145-150; 3 Am. & Eng. Encyc. L., p. 1055; Pomeroy's Rem., sec. 392; Liggett v. Ladd, 17 Or. 89, 21 Pac. 133.

The next point urged is that the deceased, when he made application to become a member in 1888, stipulated that: "I will seek my remedy for all legal rights on account of said membership or connection therewith in the tribunals of the order only, without resorting to their enforcement, in any event or for any purpose, to the civil courts;" and, inasmuch as the record shows that the laws of the association provided a remedy for the grievance complained of by the tribunals of the lodge, and provided for appeals from a lower to a higher of its tribunals, such remedy was exclusive, or that, at least, such remedies must be pursued and exhausted before resort can be had to the

civil court. This matter has given rise to much diversity of opinion among the decisions. One line holds such an agreement, when applied to such a question as here under consideration, is against public policy, and is void, especially when such an agreement is made in advance of any dispute or controversy. On the other hand, there is a line of decisions, and probably the greater number, holding that public policy does not preclude one from contracting to restrict such right, and that laws of the association to that effect, otherwise valid, are binding, unless, as some of these authorities say, it appears that the procedure under them was so irregular as to work gross injustice, or was done in fraud. Many cases showing these conflicting views are collected and cited in notes to Ryan v. Cudahy (Ill.), 49 L. R. A. 353, 3 Am. & Eng. Encyc. L. (2d Ed.) 1074, and Niblack, Ben. Soc., pp. 602-606. This court has already held that the requirement to resort to such remedies was not a condition precedent to the bringing of an action in the civil court. "To hold otherwise would be an attempt to clothe such voluntary association with power to create judicial tribunals, which would be contrary to the law of the land." Daniher v. Grand Lodge A. O. U. W., 10 Utah, 110, 37 Pac. 245. Many cases collected in the above citations hold similarly. Among them may be noticed the following: Whitney v. Nat. Acc. Ass'n, 52 Minn. 378, 54 N. W. 184; Sanford v. Com. Trav. Ass'n (Sup.), 33 N. Y. Supp. 512; Id. 41 N. E. 694; Knorr v. Bates (Com. Pl.), 35 N. Y. Supp. 1060; Supreme Council v. Garrigus, 104 Ind. 133, 3 N. E. 818, 54 Am. Rep. 298; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915; Ins. Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365. We therefore hold that plaintiff was not required to exhaust the remedy provided by the tribunals of the association as a condition precedent to the bringing of this action. We have no doubt of the power of members of a voluntary association to restrict themselves, as to matters incidental to the operation of the association, to remedies before tri-

bunals created by the association, the nature and kind of which we need not here consider. We are, however, of the opinion that this case does not fall within such rule. The right to the moneys due here was a property right, and one created by and growing out of a contract. The fundamental principle of law governing this matter is concisely stated by the Maine court: "The law, and not the contract, prescribes the remedy, and parties have no more right to enter into stipulations against a resort to the courts for their remedy in a given case than they have to provide a remedy prohibited by law." Stephenson v. Ins. Co., 54 Me. 55. A further observation can here also be made. The court found that in 1897 the deceased was afflicted with a mental disease disqualifying him from following his avocation and earning a livelihood, and so more or less continued to suffer from such mental derangement until July 1, 1898, when he suddenly became worse, and at the latter part of said month he was taken and confined in the State Insane Asylum, where he remained, and died from said trouble in May, 1901; all of which the said lodge well knew and had notice, and, in recognition thereof, paid sick benefits because of said illness during the year 1897. The court also found that the deceased was in good financial standing, and all of his dues had been paid, during all of the months in 1898, up to and including the first day of January, 1899, and that his said dues were received by the said lodge and placed to his credit with full knowledge of the mental condition and infirmity of the said deceased; and that he was carried by the association on the roll of membership during all of said time and during all of the year 1899, but on January 1, 1900, he was dropped from membership by said association because of his arrears and in default of his payment of dues for 1899, without his knowledge or consent, and without representation or hearing, and at a time when the association well knew he was confined in the insane asylum, and was an irresponsible being, afflicted with

and suffering from mental derangement. And when plaintiff, in the lifetime of the deceased, as well as after his death, demanded payment for the said sick benefits from July 1, 1898, to the time of decedent's death, the association declined and refused to pay any part thereof. In view of these facts so found such kind of proceeding and adjudication against the deceased, under the circumstances, was so irregular as to work a gross and manifest injustice, and brings the case without the rule announced by many of the cases which appellants claim support the doctrine contended for by them.

The laws of the association provide that a member is not entitled to sick benefits if, when his sickness begins, he is more than 13 weeks in arrears for dues. It is asserted by appellants that the deceased took sick July 5 or 7, 1898; that on July 1, 1898, he was in arrears for dues $3.70, or 70 cents over 13 weeks. It is admitted that the deceased was in good financial standing January, 1898, and that, giving the deceased credit for the moneys in cash paid and for goods purchased of him by the association, he was in good financial standing and fully paid up to July 1, 1898. That is to say, the dues owing from January to July, 1898, amounted to $6. On April 7, 1898, he was given credit by the association on dues for goods purchased in March and April amounting to $2.30, leaving him in arrears on July 1st, $3.70. Of this amount the association was paid $2.55 in cash (defendants say not until July 14th), and on June 20th the association purchased from the deceased goods amounting to $1.15 (which, added to $2.55, makes $3.70). It is now here asserted by appellants that, inasmuch as the lodge did not get the bill for this purchase until July 14th, the deceased could not be given credit any earlier for the bill, and then could be credited on dues only upon being requested so to do; from which it is argued that the deceased was more than 13 weeks in arrears for dues at the time when his illness commenced. But the plaintiff testified that she paid

the $2.55 in cash the day before July 1, 1898. Even had the deceased not been given credit for the said goods amounting to $1.15, he would only have been in arrears on July 1, 1898, the last-named amount; and now, conceding that on the first day of July, 1898, there was another month due, as the dues were payable $1 a month in advance, he was in arrears only $2.15 on July 7, 1898, which was less than 13 weeks. But, in addition to this, the financial secretary and treasurer of the lodge says that when plaintiff paid him the $2.55 (which, he says, was July 14th; the plaintiff says was June 30th) she also handed him a bill for the said $1.15, and told him to give credit for it. If plaintiff's testimony, therefore, is true, the deceased then was not in arrears at all on July 1, 1898. Besides, plaintiff produced a receipt issued and signed by the said secretary and noble grand of the order, and with the seal of the association affixed, certifying that the deceased has paid $3.70 "in full for all charges to July 1, 1898;" one "in full of all charges to September 15, 1898;" another "in full of all charges to November 1, 1898." Moreover, the court found as a fact that on the first day of July, 1898, the lodge was indebted to the deceased in the sum of $1.15; that the said plaintiff on the said day paid to the said secretary and treasurer the sum of $2.55, which, on the fourteenth day of July, 1898, was by him turned over to the lodge, and it gave him credit therefor and for said bill of $1.15 on dues, and which was received by the lodge with full knowledge of the sickness and state of mind of the said deceased, and that the said payment of the said $2.55 placed the deceased in good financial standing with said lodge up to the first day of July, 1898; that the plaintiff paid the said lodge the monthly dues for every month thereafter up to January, 1899, all of which was received and retained by the said lodge with full knowledge of all the facts and conditions surrounding the said deceased. The evidence is sufficient to support these findings. In such case the lodge is es-

topped from insisting upon any forfeiture. Millard v. Supreme Council (Cal.), 22 Pac. 864; Benefit Ass'n v. Kinsey (Va.), 43 S. E. 338; Lord v. Protection Ass'n (Mich.), 96 N. W. 443; Menard v. Society, etc. (Conn.), 27 Atl. 1115; Roeding v. Lodge (Comp. Pl.), 11 N. Y. Supp. 712. But what would seem to be most conclusive against appellants in this contention is the fact that there is evidence showing that the sickness of the deceased did not begin July 7, 1898, but that it began in 1897, and continued up to the time of his death, and from which ailment he died, and the court so finding the fact to be.

Upon a careful consideration of the whole case, we are of the opinion there is no error in the record except a mere clerical one. It appears the court made a mistake, which was one only of computation, in the number of weeks from July 1, 1898, to May 7, 1901. The court entered judgment for $554.25. The amount for which judgment should have been entered, on a correct computation, is $508.65. Plaintiff has offered to remit the excess, which is $45.60.

The judgment of the court is therefore affirmed, with the modification that the court below, on remittitur be, and it is hereby, directed to so modify the judgment to read for $508.65, instead of $554.25. In all other particulars it shall stand as made. The costs of this appeal to be taxed against appellants.

BARTCH, C. J., concurs in the judgment. McCARTY, J., concurs.