BEDNAREK v. BROTHERHOOD OF AMERICAN YEOMEN.

No. 2841.   Decided April 29, 1916.   (157 Pac. 884.)

1.  INSURANCE—FRATERNAL INSURANCE—CONDITION TO ACTION—SUBMISSION TO ARBITRATION.  Where a fraternal insurance association denied it was under any obligation to pay a death benefit, and the beneficiary, before suing, requested that the matter be submitted to a board of arbitration, as provided in the certificate of membership, to which the association failed and neglected to consent, the beneficiary could bring her action for the death benefit, despite the provision of the certificate that no action could be maintained under it, unless a board of arbitration should fail to settle the claim.[1]  (Page 71.)

2.  INSURANCE—FRATERNAL INSURANCE—INFORMATION OF MEDICAL EXAMINER—SUFFICIENCY OF EVIDENCE.  In an action against

a fraternal insurance order for a death benefit, evidence *held* sufficient to support finding that the medical examiner, when he made the examination of the applicant for insurance, was informed that the latter had undergone an operation for appendicitis. (Page 72.)

3. APPEAL AND ERROR—REVIEW—WEIGHT OF EVIDENCE. The weight to be given the testimony of witnesses was a question for the jury, and not for the Supreme Court. (Page 73.)

4. INSURANCE—FRATERNAL INSURANCE—FALSE STATEMENT REGARDING HEALTH. An applicant for life insurance must answer truthfully every question put to him by the medical examiner regarding the present and last state of his health; and if any statement made by him is untrue in any material matter, its falsity voids the contract of insurance, though made without fraudulent intent. (Page 73.)

5. INSURANCE—LIFE INSURANCE—WRITTEN WARRANTIES—WAIVER. Where an applicant for insurance makes truthful statements to the medical examiner respecting his health, and his policy is issued to him, the insurer will be deemed to have waived the written warranties in the application and policy, in so far as they are not in accord with the facts disclosed to examiner. (Page 73.)

6. INSURANCE—LIFE INSURANCE—FALSE WARRANTIES AS TO HEALTH. Where the false statements of an applicant for life insurance, made warranties by the policy, relate to mere temporary ailments or a slight indisposition, that in no way tended to impair or prejudicially influence the health or longevity of the insured, such as tonsilitis and biliousness, such statements will not render the policy void, since such warranties are to be construed with reference to the general object of the inquiry, which is to ascertain whether the applicant is a good risk. (Page 74.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow*, Judge.

Action by Lillian Bednarek against the Brotherhood of American Yeomen, a corporation.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

---

[1]*Moran* v. *Knights of Columbus*, .... Utah, ...., 151 Pac. 353; *Daniher* v. *Grand Lodge A. O. U. W.*, 10 Utah 110, 37 Pac. 245.

*Scott & Hackett,* for appellant.

*C. S. Varian and M. E. Wilson,* for respondent.

## APPELLANT'S POINTS.

Where the insured warrants the truthfulness of his answer in his application for insurance; the validity of the policy depends upon the truth of said answers, but if such answers, ·or any of them, are false, the policy is thereby rendered void, whether the thing as denied in such application, contributed to the death of the insured or not. (*E. H. of C. W.* v. *Pratter,* 103 P. 558; *Elliott* v. *K. of M. M.,* 56 Wash. 320, 324; *Met. L. Ins.* v. *Brubaker,* 78 Kan. 146, 96 P. 62; *M. W. A.* v. *Owens,* 130 S. W. 858; *Collver* v. *M. W. A.,* 135 N. W. 67, 68; *Pelican* v. *M. I. Ons. Co.,* 119 P. 778, 781; *Beard* v. *Royal Neighbors,* 99 Pac. 83, 85, 86 (Oregon); *Hosland* v. *W. U. L. Ins. Co.,* 107 P. 868, 867 (Wash.); *Miller* v. *C. U. A. Co.,* 125 P. 782 (Wash.), 69 Wash. 529; *Tobin* v. *M. W. A.,* 85 N. W. 472 (Mich.); *McDermott* v. *M. W. A.,* 71 S. W. 833 (Mo.); *Fraser·* v. *Aetna,* 90 N. W. 467 (Wis.); *Jeffries* v. *Ins. Co.,* 89 U. S. 833; 99 P. 1096 (Oregon); 116 S. W. (Missouri) 1130; 159 Illinois Appeals 498.)

## STATEMENT OF FACTS.

Plaintiff brought this action to recover a death benefit provided for in a certificate of membership of the Brotherhood of American Yeomen, which certificate was issued by the association to one Leon Q. Bednarek. The benefit was made payable to the plaintiff, wife of Leon Q. Bednarek. The application upon which the certificate of membership was issued consisted, among other things, of questions printed on the application blank which were propounded to Leon Q. Bednarek by the association's examining physician, who wrote down the answers in blank spaces provided therefor in the application. Among the questions propounded, and the answers made thereto, contained in the application are the following:

"Question No. 8. Have you consulted a physician in the last ten years? Answer. No."

"Question No. 15. Have you had appendicitis? Answer. No."

"Question No. 17. Have you had any illness, ailment or injury not herein mentioned? (State particulars.) Answer. No."

The record shows that Bednarek had been operated on for appendicitis, and that about the year 1905 he had an attack of biliousness, "a little constipation;" consulted a physician who gave him a prescription for the ailment; that in March, 1911, he had an attack—"a mild case"—of tonsilitis. The application, a copy of which was attached to and made a part of the certificate of membership, contained the following provisions:

"I hereby * * * warrant all answers herein purporting to be mine are mine, and are full, complete, and true, without suppression, evasion, concealment, or mental reservation. * * * I agree that any untrue answer to any question on this application blank, or concealment, misrepresentation, or suppression, * * * shall immediately without process render the certificate issued hereon null and void. * * * I fully understand the meaning of all questions asked, * * * and have fully and completely, without evasion or mental reservation, answered each and every one as indicated, and warrant the answers to be true, and finally agree that, if not so answered as shown by the copy hereof on the certificate to be issued hereon, I will forfeit all right to any benefit provided therein, unless I promptly notify this association of such untrue answers as soon as I receive such certificate, or, failing to so notify, I agree that it shall be understood that such answers are full, complete, and true."

The application, after being filled out by the association's examining physician, as stated, was, on November 5, 1911, signed by Bednarek. The certificate of membership, which was delivered to Bednarek on or about November 14, 1911, contained, among other things, the following proviso:

"No action shall be maintained on this certificate, unless brought within one year from date of death * * * of said member, and not at all unless a board of arbitration * * * shall fail to settle same."

Bednarek died November 24, 1913. From the time he received his certificate of membership until his death he paid all

dues, assessments, and premiums provided for in the certificate, and was, for aught that appears in this record, in good standing in the association. Proofs were duly made of the death of Bednarek on behalf of plaintiff, and payment demanded of the death benefit provided for in the certificate of membership. The association denied liability on its part and refused absolutely to pay the claim. The case was tried to a jury, who rendered a verdict for plaintiff in the sum of $1,542.99. To reverse the judgment entered on the verdict, defendant prosecutes this appeal.

McCARTY, J. (after stating the facts as above).

The defense in this action is based on the following grounds: (1) That plaintiff brought the action without first having submitted her claim to a board of arbitration, as provided in the certificate of membership; and (2) that the answers to questions Nos. 8, 15, and 17, which are set forth in the foregoing statement of the case, and which by the terms of the contract were made warranties, were false.

The record not only shows that defendant denied that it was under any obligation whatever to pay plaintiff the death benefit provided for in the certificate of membership, but it also shows that plaintiff, before commencing this action, requested of the defendant that the matter be submitted to a board of arbitration as provided in the certificate of membership, and that defendant failed and neglected to consent thereto. Under those circumstances plaintiff was under no obligation, legal or otherwise, to defendant, to further postpone the bringing of the action. May on Insurance, Sections 493 and 496; 4 Joyce on Insurance, Sections 3256, 3257; *Moran* v. *Knights of Columbus*, 46.. Utah., 397., 151 Pac. 353. This question was before this court in the case of *Daniher* v. *Grand Lodge, A. O. U. W.,* 10 Utah, 110, 37 Pac. 245. The third syllabus of that case correctly reflects the opinion on this point, and is as follows:

"Where the constituion and by-laws of an unincorporated association provide for the payment of a fixed sum on the death of each member, and create a board of arbitration to whom all claims against the association shall be submitted, and whose decision shall be final, held, that such provisions constitute merely a revocable agreement

to arbitrate, and do not preclude resort to the courts, nor is such a submission to arbitration a condition precedent to the bringing of an action."

The defense that plaintiff is not entitled to recover because of the alleged false statements made by Bednarek and contained in his signed application upon which his certificate of membership in defendant's association was issued presents a question more difficult of solution. There is evidence tending to show that the physician, who examined Bednarek and wrote into the application the alleged false statements herein referred to, knew at the time that Bednarek had undergone an operation for appendicitis. Plaintiff testified that at the time the examination was made Bednarek carried a "dark brown scar raised above the abdomen," that the scar was about five inches long and "extended almost to the waist line," and that it was caused by the incision that was made in the operation for appendicitis. She further testified that, at the time the examination was being made and the application filled out, she was in a room adjoining the one in which the examination was being conducted; that the rooms were connected by an opening across which curtains—portieres—were hanging; that she heard Bednarek and the physician "discussing appendicitis"; that the doctor said that the scar left by the incision was in a perfectly normal, healthy condition and there would be no further trouble; that there had been a number of people pass examinations who had been operated on for appendicitis. The physician's testimony was taken by deposition, which was read to the jury. He testified in part as follows:

"I examined Bednarek. * * * I know of no person so placed that they could overhear the conversation between myself and Bednarek at the time of such examination, as the doors in the room in which the examination took place were closed and locked. * * * I requested Bednarek to strip to the waist, and he did so, with the exception of a thin undershirt. I looked at the abdomen of said Bednarek, [and] I did not discover any scar or scars upon it. * * * Bednarek told me that he had never had appendicitis. * * * I was satisfied that all of such questions were answered by

Bednarek truthfully and fully.  *  *  *  I cannot state posi-
tively whether I had any conversation with the said Bednarek
in the presence of any other person.  I do not recall any such
conversation.''

There is other evidence in the record tending to dispute the
testimony of plaintiff above set forth.  The weight, however,
to be given the testimony of the several witnesses, was a ques-
tion for the jury, and not for us, to determine.  We are
of the opinion that there is ample evidence to sup-     **3, 4**
port a finding by the jury that the doctor, at the time
he made the examination, was informed that Bednarek had
undergone an operation for appendicitis.  The court very
fully, and as we think correctly, charged the jury on all of
the issues.  Regarding the duty of Bednarek to answer truth-
fully the questions propounded to him by the physician, the
court instructed the jury in part as follows:

''It is the duty of an applicant for life insurance to answer
truthfully every question put to him relating to the present
and past state of his health, and all matters connected there-
with,  *  *  *  and if any statement made by him is untrue
in any material matter, as such materiality is defined by these
instructions, the falsity of said statement or statements voids
the contract and makes it nonenforceable; and even though
it might be that the applicant made such misstatement with-
out fraudulent intent it would make no difference, if it was
untrue in fact.  *  *  *  The contract cannot be enforced.''

The physician was the agent of the defendant association.
The jury having, by their verdict, in effect found that the
physician knew at the time he made the examination that
Bednarek had undergone an operation for appendicitis, his
knowledge was the knowledge of his principal.  While
there is conflict in the authorities on the question, we     **5**
think the better rule—the one based on substantive
justice—is that in cases of this kind, where the insured makes
truthful statements to the agent respecting the matter about
which he is interrogated and a policy is issued to him, the as-
sociation will be deemed to have waived the written warranties
in so far as they are not in accord with the facts disclosed.
*Turner* v. *American Casualty Co.*, 69 Wash. 154, 124 Pac.

486; *Aetna L. S. F. & T.* v. *Olmstead*, 21 Mich. 246, 4 Am. Rep. 483; *Mutual Ben. L. Ins. Co.* v. *Robison*, 58 Fed. 723, 7. C. C. A. 444, 22 L. R. A. 325; *Kausel* v. *Minn. Farmers' Mut. Fire Ins. Ass'n.*, 31 Minn. 17, 16 N. W. 430, 47 Am. Rep. 776; *South Atlantic Life Ins. Co.* v. *Hurt's Adm'x.*, 115 Va. 398, 79 S. E. 401; *Pudritzky* v. *Supreme Lodge Knights of Honor*, 76 Mich. 428, 43 N. W. 373; *Sargent* v. *Modern Brotherhood of America*, 148 Iowa, 600, 127 N. W. 52; *Franklin Life Ins. Co.* v. *Galligan*, 71 Ark. 295, 73 S. W. 102, 100 Am. St. Rep. 73; 1 May, Insurance, Section 132; 3 Cooley's Briefs on Insurance, 2555 and 2558.

It is contended with much earnestness that, it having been shown by undisputed evidence that Bednarek, about eight months before he was examined on his application for membership, and about two years and eight months before he died, consulted a doctor and was treated by him professionally for tonsilitis, and that about six years before the examination he had an attack of billiousness and consulted a doctor in regard to the ailment, a breach of the warranties is clearly established, and hence plaintiff cannot successfully maintain this action. The authorities generally hold that insurance companies and beneficiary associations may select the terms on which they will enter into contracts of insurance, and may provide that the contract is void if the terms imposed are not complied with. They may, by the terms of the contract, provide that a misrepresentation may be made a warranty and render the contract void. And there is a long list of authorities which hold that false statements which are made warranties will nullify the contract, regardless of whether the misstatements have a bearing on the question of risk, or whether the death of the insured did or did not result wholly or in part from the matters about which the false statements were made. We think the better-reasoned decisions in this class of cases, and those more in accord with our ideas of justice, are to the effect that where the false statements relate to mere temporary ailments, or to a slight indisposition that in no way tended to impair or in any way prejudicially influence the health or longevity of the insured, such statements will not render the policy or certificate void. In the case of

*Peterson* v. *Des Moines Life Ass'n,* 115 Iowa, 668, 87 N. W. 397, it is said:

"The tendency of the courts, without the aid of legislation, has been to construe statements as to previous accidents and diseases into mere assertions on the part of the applicant as to what he knows of his personal knowledge, or may be presumed in good faith to know, instead of strict warranties regardless of personal knowledge. *Wilkinson* v. *Insurance Co.,* 30 Iowa, 119 (6 Am. Rep. 657). It is well settled that *such warranties are to be construed with reference to the general object of the inquiry.*" (Italics ours.)

See *Bancroft* v. *Association,* 120 N. Y. 14, 23 N. E. 997, 8 L. R. A. 68; *Connecticut Mutual Life Ins. Co.* v. *Union Trust Co.,* 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708; *Mutual Life & Ins. Co.* v. *Simpson* (Tex. Civ. App.) 28 S. W. 837; *Blumenthal* v. *Berkshire Life Ins. Co.,* 134 Mich. 216, 96 N. W. 17, 104 Am. St. Rep. 604; *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295, 73 S. W. 102, 100 Am. St. Rep. 73; *Rupert* v. *Supreme Court Mutual Order of Foresters,* 94 Minn. 293, 102 N. W. 715; *Northwestern Mutual Life Ins. Co.* v. *Heimann,* 93 Ind. 24; *Cushman* v. *United States Life Ins. Co.,* 70. N. Y. 72; *Billings* v. *Metropolitan Life Ins. Co.,* 70 Vt. 477, 41 Atl. 516; *Meyer* v. *Fidelity & Casualty Co.,* 96 Iowa, 378, 65 N. W. 328, 59 Am. St. Rep. 374; *Sargent* v. *Modern Brotherhood of America,* 148 Iowa, 600, 127 N. W. 52.

In the case last cited the court, in the course of a well-considered opinion, says:

"Giving to the questions and answers in this case relating to previous disease or severe sickness the interpretation thus indicated, it is clear that the evidence did not show any falsity in the statements. The tonsilitis or quinsy was not of a character to be denominated a disease, and the stomach trouble appears to have been of a similarly inconsequential character. Headaches due to temporary causes, not indicating or resulting in constitutional impairment, are not regarded as matters of enough consequence to be disclosed, even where there is a specific question as to habitual headaches. * * * The same principle is to be applied in construing questions and answers relating to prior attendance by a physician. In response to such question it is not necessary for the applicant to disclose the occasion and circumstances of every consultation of a physician for temporary disability or indisposition, not amounting to a disease."

So, in the case at bar, the evidence shows that the tonsilitis and biliousness for which Bednarek consulted· doctors were temporary ailments only, and were so slight and inconsequential as to preclude any inference that they, or either of them, were detrimental to the subsequent health of the insured, or tended in the remotest degree to shorten his life.

The judgment is affirmed; respondent to recover costs.

STRAUP, C. J., and FRICK, J., concur.