398 P.2d 873

**Jay O. BARNHART and Vida N. Barnhart, Plaintiffs and Respondents,**

v.

**CIVIL SERVICE EMPLOYEES INSUR-ANCE COMPANY, Defendant and Appellant.**

**No. 10133.**

Supreme Court of Utah.

Feb. 5, 1965.

Christensen & Jensen, Salt Lake City, for appellant.

Jackson B. Howard, and Howard & Lewis, Provo, for respondents.

CROCKETT, Justice.

Plaintiffs Barnhart sue on the uninsured motorist clause of their own insurance policy to recover for injuries suffered by Mrs. Barnhart in an automobile collision with an uninsured motorist, Kenneth D. Welcker. The trial court gave judgment for plaintiffs in the amount of $6,182.50. Defendant's principal attack on the judgment is that under the terms of the policy, the plaintiffs were not entitled to bring action until they had submitted both the questions of liability and damages to arbitration.

The "uninsured motorist" clause is a comparatively new type of insurance coverage developed to take care of a need for protection of the policy holder against damages suffered in a collision with a motorist who has no insurance.[1] It has recently come into general use, and such a provision

---

1. For a comprehensive treatment citing authorities on the application of this coverage, see Asken, Arbitration Under the Uninsured Motorist endorsement, 1965 Ins. L.J. 17 (Jan., 1965).

is now automatically included in most public liability and property damage policies.

One provision of the policy is:

"Damages for Bodily Injury Caused by Uninsured Automobiles: To pay all sums which the insured * * * shall be *legally entitled to recover* as damages *from the owner or operator of an uninsured automobile* because of bodily injury, * * * sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided for the purposes of this endorsement, *determination as to whether the insured * * * is legally entitled to recover such damages, and if so the amount thereof, shall be made* by agreement between the insured * * * and the company, or if they fail to agree, *by arbitration.*"

Included among the numerous paragraphs of the policy is a provision for arbitration:

"6. *Arbitration*: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile * * * or do not agree as to the amount * * * *then, upon written demand of either,* the

matter * * * *shall be settled by arbitration* * * * and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction thereof. *Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators.* * * *

\* \* \* \* \* \*

"9. Action Against Company: *No action shall lie against the company unless, as a condition precedent thereto,* the insured or his legal representative has fully complied with all the terms of this endorsement nor unless within one year from the date of the accident:

\* \* \* \* \* \*

"(c) the insured or his legal representative has formally instituted arbitration proceedings."

It was stipulated that the defendant had filed a demand for arbitration before the time of trial, and that plaintiff refused, claiming that they were not required to do so under Utah law.

At the outset we note that the arbitration provision which defendant insists should be applied does not fall within the terms of Sec. 78–31–1, U.C.A.1953,[2]

---

2. Title 78, Ch. 31, is an enactment of the 1925 Uniform Arbitration Act. The Commission on Uniform State Laws with-

drew the act in 1943, but it is still in effect in Utah, Nevada, and North Carolina. 9 Uniform Laws Ann. 76 (1957).

which provides that parties may agree in writing to arbitration of controversies *existing* between them at the time of the agreement to submit * * *[3] Nor can it be regarded as merely an agreement for appraisal, which are generally approved.[4] It relates to future controversies which may arise after the contract is entered into. This Court has on several occasions endorsed the general rule that covenants of this type, which require parties to arbitrate any future dispute and to be bound by the result, thus precluding them from presenting the controversy in court, will not be enforced.[5] We are aware that this rule has been subject to criticism by some legal writers,[6] and that some of our sister states have repudiated it.[7]

One of the criticisms of the rule is that compulsory arbitration should not be considered against public policy as its opponents claim, but rather in accord therewith, because it encourages the amicable settlement of disputes. It is sometimes asserted that the underlying motivation for this doctrine when it originated was that the income of the judges depended upon the cases handled, so they desired to hold on to litigation for pecuniary reasons; and that inasmuch as this condition no longer exists, the doctrine should be abolished. We agree that no such consideration exists today, and that neither the possible erstwhile pecuniary interest of the courts, nor any present jealousy over the prerogative of handling the nowadays all too numerous

3. Johnson v. Brinkerhoff, 89 Utah 530, 544, 57 P.2d 1132, 1139 (1936); Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421, 423 (1945); Skinner v. Gaither Corp., 234 N.C. 385, 386, 67 S.E.2d 267, 269 (1951); cf. Shumaker v. Utex Exploration Co., 157 F.Supp. 68, 72 (D. Utah 1957).

4. See Daniher v. Grand Lodge A. O. U. W., 10 Utah 110, 122–123, 37 P. 245, 248–249 (1894); Salzner v. Jos. J. Snell Estate Corp., 81 Utah 111, 16 P.2d 923, 925 (1932); Campbell Bldg. Co. v. State Road Comm'n, 95 Utah 242, 265–266, 70 P.2d 857, 867–868; Hill v. Seaboard Fire and Marine Ins. Co., 374 S.W.2d 606, 610 n. 2 (Mo.App.1963); Royal Ins. Co. v. Ries, 80 Ohio St. 272, 283, 88 N.E. 638, 640 (1909).

5. Daniher v. Grand Lodge A. O. U. W., 10 Utah 110, 122–123, 37 P. 245, 248–249 (1894); Pearson v. Anderburg, 28 Utah 495, 499–501, 80 P. 307, 309 (1905); Bednarek v. Brotherhood of American Yeomen, 48 Utah 67, 71–72, 157 P. 884,

886 (1916); Johnson v. Brinkerhoff, supra note 2; Latter v. Holsum Bread Co., supra note 2; see, in general, Annot., 26 A.L.R. 1077 (1923); cf. Annot., 135 A.L.R. 79 (1941); 7 Am. Jur.2d, Automobile Insurance, § 138, p. 465.

6. Friedman, Relief for Injured Persons and the Courts, 1 Arb.J. 25 (1937); Note, Harv.L.Rev. 1022 (1948); McLaughlin, Arbitration Under Uninsured Motorist Insurance, 1962 Ins.L.J. 353; Fieting, Arbitration Under the Uninsured Motorists Coverage, 28 Ins. Counsel J. 629; see in general, Anno. 79 A.L.R.2d 1252, particularly non New York cases in supplemental Blue Books.

7. Cf. United Assn. of Jour. & App. of Plumbing, etc. v. Stine, 76 Nev. 189, 351 P.2d 965 (1960); Park Construction Co. v. Independent School Dist. No. 32, 209 Minn. 182, 296 N.W. 475, 135 A.L.R. 59 (1941); Latter v. Holsum Bread Co., 108 Utah at 370, 160 P.2d at 423 (Wolfe, J., concurring).

disputes, has any legitimate bearing on the issue of compulsory arbitration. The real issue is whether it fits properly into the pattern of our system of law and justice.

■ There should be no disagreement on the proposition that all persons who desire to do so should also be encouraged to resort to the orderly processes of law for the purpose of settling disputes or grievances, real or imaginary, nor that they should be allowed free access to the courts for that purpose. For this reason, contracts imposing the obligation of private arbitration to be finally binding upon a party, thus precluding access to the courts for the adjudication of one's rights, should be subjected to careful scrutiny, lest strife result; or covenants be exacted which may deprive a person of rights which are inalienable, and which the courts should therefore not enforce as being against public policy. Unless they are carefully safeguarded, any of the important basic liberties which exist under our law might be impaired or even destroyed if they could be taken away by contract and coupled with a covenant which would prevent access to the courts to enforce them.

■ That the rights of individuals and the assurance that they will be safeguarded by the courts and the processes of law are considered essential to the maintenance of what we are pleased to call our well-ordered society is shown by the inclusion of Art. I, Sec. 11 in our Utah Constitution:

"All courts shall be open, and every person, for an injury done to him in his person, * * * shall have remedy by due course of law, * * * and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

It is thus to be seen that covenants which prevent a party from having access to court runs counter to both the expressed purpose and the spirit of our system of justice. This is further accented because such a provision purports to confer final judicial authority on private arbitrators and tends to divest the official courts of jurisdiction. This precludes them from fulfilling their responsibility of remaining available to adjudicate all controversies for anyone seeking justice.[8] The reticence with which this

8. See Reasor, Uninsured Motorist Coverage—The Hidden Arrow in the Plaintiff's Quiver, 12 Drake L.Rev. 119 (1963); Hentemann, Uninsured Motorist Coverage, 12 Clev.—Mar.L.Rev. 66 (1963); Comment, Enforcement of Arbitration Provisions in Uninsured Motorist Ins., 15 Stanf.L.Rev. 113; Cheek, Recovery Procedure Under the Uninsured Motorist Coverage of the Family Liab. Policy, ABA Sec. of Ins., Neg. & Comp.Law 281, 286–88; Boughton v. Farmers Ins. Exch., 354 P.2d 1085, 79 A.L.R.2d 1245, 1250 (Okla.1960); Dominici v. State Farm Mut. Auto Ins. Co., 143 Mont. 406, 390 P.2d 806, 809 (1964); State ex rel. State Farm Mut. Ins. Co. v. Craig, 364 S.W.2d 343, 345–346, 95 A.L.R.2d 1321,

should be done is further emphasized by realizing that such enforcement of finally binding arbitration cuts into the procedural safeguards our law provides, including the right to have a trial by jury if one so desires,[9] and the right of review on appeal.[10]

Reflection will bring to mind circumstances in which arbitration which is binding and final would deny a remedy where under our conception of justice a remedy and/or right of review must necessarily exist. For example, suppose under this compulsory arbitration the arbitrators were influenced by bribery or some other corrupt or improper motive, or simply that the result was so obviously wrong as to be unconscionable. Surely no reasonable person would contend that the party adversely affected could then be denied access to the courts for redress.[11] It thus should be evident how desirable, and in fact essential, it is that ultimate access to the courts be available; because there can be no assurance either as to the integrity of the arbitration, or that the parties will abide by it, except as the courts will enforce it. Inasmuch as the parties obviously would be unable to agree and in serious dispute before arbitration is invoked, if one of the parties is rebellious and rejects the attempt to impose arbitration upon him, it seems but sensible and practical to allow the party who insists on going to the court to go there in the first place, and thus eliminate the time, trouble, expense and duplication of effort involved in arbitrating first, then going to court.[12]

■ In addition to the foregoing considerations, there are others arising from the context of the contract itself which also have a bearing on the conclusion we reach. It recites that the defendant's liability is to pay the amount the insured "shall be *legally* entitled to recover as damages" from the operator of an uninsured automobile. The reasonable import of that language would seem to be that the amount plaintiffs may recover should be determined by the *processes of law* and thus by a court rather than by an arbitrator.[13]   Even

1325–1326 (Mo.App.1963) ; Hill v. Seaboard Fire & Marine Ins. Co., 374 S.W. 2d 606 (Mo.App.1963).
9. See Stickle v. Union Pacific RR. Co., 122 Utah 477, 251 P.2d 867, 871, stating that both constitutional and statutory provisions assure trial by jury. Utah Constitution, Art. I, Sec. 10; Sec. 78–21–1, U.C.A.1953.
10. See Utah Constitution, Art. VIII, Sec. 9.
11. See e. g., Giannopulos v. Pappas, 80 Utah 442, 15 P.2d 353 (1932); and St. Paul Fire & Marine Ins. Co. v. Kirkpatrick, 129 Tenn. 55, 64–65, 164 S.W. 1186, 1189 (1914).
12. Comment, Uninsured Motorist Insurance: California's Latest Answer to the Problem of the Financially Irresponsible Motorist, 48 Calif.L.Rev. 516, 533–34; Fieting, supra note 5, at 629–30; McLaughlin, supra note 5, at 358–60.
13. See Cheek, supra note 6 ; Comment, Calif.L.Rev., supra note 9, at 533; Boughton v. Farmers Ins. Exchange, 354 P.2d 1085, 79 A.L.R.2d 1245 (Okla. 1960).

more important in that connection is the fact that it is difficult to perceive how plaintiffs and the defendant could determine by arbitration what plaintiffs might be "legally entitled" to recover from a third party, the uninsured motorist (Welcker).[14] The latter, not being a party to the insurance contract, could not be bound by arbitration between the plaintiffs and defendant. Whether plaintiffs are legally entitled to recover from Welcker, and if so, the amount of damages, could only be determined between the plaintiffs and Welcker.[15] For the sake of argument, suppose plaintiffs and defendant did by arbitration arrive at some figure; and that thereafter the plaintiff should sue Welcker and obtain a larger judgment. Under the terms of the policy the defendant would be obligated to pay the latter amount. It is therefore plain that until the plaintiffs had determined whether they are "legally entitled to recover" from Welcker, and if so the amount of damages, any arbitration with the defendant would be useless.

There is yet another point which militates against the justice of forcing on plaintiffs the arbitration covenant in such an insurance contract. They are long, involved documents containing many paragraphs of fine print, among which is immersed the arbitration provision. The insured is usually simply in the position of desiring to purchase some automobile liability insurance, and insofar as the policy is concerned, is not in a position to frame his own policy or to propose conditions of his own. He is obliged to take the policy that is offered with its various and sundry provisions, many of which he is quite unaware of. With respect to this arbitration, even if it were discovered, its meaning and effect are somewhat uncertain even to lawyers and judges, and presumably would be more so to laymen, most of whom are not disposed either by training or inclination to cope with the multifarious provisions of such a formidable document. The insured is not required to read, nor to understand, nor to sign anything, but only to pay his premium. The practical reality is that the lay purchaser is in an inferior bargaining position and simply accepts unilaterally the policy as prepared by the company.[16] Under such circumstances, it would be inequitable and unjust to hold that he had given up so important a privilege as his right to seek justice in court unless it clearly appeared that he was aware of what he was doing, and that he had voluntarily made such a commitment.

There is an interesting anomaly here which also seems to sustain the justice of allowing plaintiffs to go to the courts to

14. Ibid.
15. See Comment, 13 Stanford L.Rev., supra note 6, at 119–20, n. 32.

16. Id. at 117–121.

**230**

have their claims adjudicated. In attempting to impose upon the plaintiffs the restriction that they must submit their dispute to arbitration, rather than to the court, the defendant is asking the court to adjudicate and to enforce its rights, but is seeking to deny the same privilege to the plaintiffs. This position implies that the court will *not* do justice as to the plaintiffs' claim against the defendant, but that it *will* and must do justice for the defendant, and this by preventing the plaintiffs from having their day in court. It would seem that an ordinary sense of fairness should dictate that if the defendant has access to the court for the protection of its rights, the same protection should also be available to the plaintiffs.

■ Inasmuch as it has long been the law of this state that covenants of the type under discussion are not enforceable, and the legislature has seen fit to change it only as to the arbitration of an existing controversy, for the reasons hereinabove set forth, we adhere to the law as heretofore established and decline to extend it to enforce a general covenant for arbitration of controversies which may arise in the future. Accordingly, the trial court was correct in ruling that the plaintiffs should not be precluded from having the court adjudicate their contention that the defendant has agreed to reimburse them for damages

they are legally entitled to recover from the uninsured motorist (Welcker).

■ Defendant has also assailed the judgment on the ground that, in any event plaintiffs were not entitled to recover against the uninsured motorist (Welcker) because the evidence does not support a finding of the latter's negligence, and also that it shows that Mrs. Barnhart was herself guilty of contributory negligence as a matter of law, which would preclude her recovery.[17] We deem it sufficient to say that we have given consideration to these contentions, and that under traditional rules, viewing the evidence in the light most favorable to the findings and judgment, the evidence supports them and they should not be disturbed. (All emphasis added.)

Affirmed. Costs to plaintiffs (respondents).

WADE and CALLISTER, JJ., concur.

HENRIOD, Chief Justice (concurring in the result).

I concur in the result because of Title 78–31, Utah Code Annotated 1953, and Latter v. Holsum Bread, 108 Utah 364, 160 P.2d 421 (1945), but not for most of the other reasons assigned in the main opinion. Personally, I see nothing wrong with a fair, voluntary arbitration agreement, and

17. For discussion of this question, see Thompson v. Ford Motor Co., 16 Utah 2d 30, 395 P.2d 62 (1964); cf. Gillespie v. Lawton, 234 F.Supp. 821, (D.Conn.1964).

the one incorporated in the insurance contract involved here seems to be such a provision, actually beneficial to the insured, unobnoxious to the policy of facilitating settlements for damages suffered, but being inimical only to Title 78–31, and its interpretation stare decisis-wise in the Latter case. The legislature has done nothing about the impractical situation provoked by the jealousy of courts that survived by fees, not salaries, in a judicial atmosphere existing along about the turn of the 18th century in England. Only a few states follow the holding of the main opinion.

· That people should be able to resort to courts of law to wash their linen, is axiomatic and fundamental in the American system, but I have doubts that such a principle pre-empts the other principle, that people are free to make a binding contract. But it is not for me to question the legislative fountain of wisdom by judicial fiat,— and in conforming, can only suggest that the legislature might take another look at 78–31, which suggestion similarly was urged in the Latter case, but which for two decades has not impressed the biennial solons.

McDONOUGH, Justice (concurring in the result).

I see no reason why the parties should not be free to make a contract for arbitration binding upon them if they so desire.

It serves the salutary purpose of encouraging the amicable settlement of controversies without the time, trouble and expense of going to court. ; I adhere to the views set forth in the concurring opinion of Justice Wolfe in the case of Latter v. Holsum Bread, 108 Utah 364, 160 P.2d 421, in which I concurred.