540 F.2d 472
 Ernest P. CHRISTIANSEN, for himself and as father and
guardian ad litem of Scott Christiansen, a minor, Appellee,
v.
FARMERS INSURANCE EXCHANGE, a California Corporation, et
al., Appellants.
 No. 75-1366.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted March 22, 1976.
Decided July 28, 1976.
Rehearing Denied Aug. 18, 1976.
 
 A. Alma Nelson, Salt Lake City, Utah (Don J. Hanson, Hanson & Garrett, Salt Lake City, Utah, with him on the brief), for appellants.
 Wilford A. Beesley of Fuller, Beesley & Harrison, Salt Lake City, Utah, for appellee.
 Before LEWIS, Chief Judge, SETH, Circuit Judge, and MORRIS, Chief District Judge.*
 SETH, Circuit Judge.
 
 
 1
 This is a diversity suit brought in Utah by an insured against the defendant insurance carriers. The action is based on the uninsured motorist coverage in three automobile policies written by the defendants on the three vehicles of plaintiff. Plaintiff brought the suit for himself and as father and guardian ad litem for his minor son who was injured after having fallen out of the vehicle his father was driving. The boy was in the cab of a truck which was pulling a U-Haul trailer. It was nighttime or very early morning, and the truck was being followed by a car, the driver of which became the uninsured motorist under the policy provisions. However, the identity of this driver was never ascertained.
 
 
 2
 The plaintiff's theory as to how the boy was injured was that this following car ran over him after he fell from plaintiff's truck. The driver of the following car stopped after the accident and the driver of a truck traveling not far behind talked to him. The parties were anxious to get medical attention for the boy and left for the hospital. However, the car of the uninsured motorist would not then start; he was left behind and was never seen again. No witness saw the unidentified motorist strike the child.
 
 
 3
 The accident took place in Idaho where plaintiff was then living. Two of the policies were issued to plaintiff when he resided in Idaho, and the earlier policy was issued to plaintiff when he was living in Wyoming. The plaintiff made a claim against the insurers, and lengthy investigations were made by the adjustors. The companies made payments for medical expenses apparently to the extent of the policy limits. Some time later, the plaintiff retained an attorney in Idaho to handle the claims under the uninsured motorist coverage.
 
 
 4
 This Idaho attorney of plaintiff made several attempts to ascertain what procedure the insurers wanted to follow as to the uninsured motorist. The attorney wrote several letters of inquiry, and he finally advised the carriers that he was going to bring suit against the uninsured motorist in Idaho naming him "John Doe." The attorney wrote the carriers to ask if he had their permission to do so. He received a reply that they had no objection to such a suit and asked that the pleadings be sent to them. This was done. Service in the John Doe suit was, of course, by publication, and ultimately a default judgment was entered which in substance recited that John Doe was negligent, that he struck the boy causing the injuries, and that there was no contributory negligence. No finding as to damages was made and no damages were included in the judgment.
 
 
 5
 The carriers did not in any way participate in the John Doe suit, but, of course, they were aware of it. Further negotiations relative to the claims were had, and investigations continued. About this time the plaintiff and his family moved to Utah. This suit was thereafter filed against the carriers only.
 
 
 6
 The plaintiff filed a motion for partial summary judgment asserting that the defendants were precluded from litigating the issue of the liability of the uninsured motorist. The trial court granted the motion on the ground that the Idaho John Doe judgment had determined that issue, and it could not be relitigated. The trial court also held as a matter of law that the plaintiff could recover separately on each of the three policies, and thus permitted "stacking." The case was submitted to the jury on the damage question only. It awarded the maximum provided by totaling the three policies, and also awarded punitive damages as prayed for by plaintiff individually.
 
 
 7
 The issues on appeal relate to the summary judgment ruling on the John Doe judgment, the "stacking" allowed by the trial court, the allowance of punitive damages, and also prejudgment interest awarded by the trial court after the verdict.
 
 
 8
 The effect to be given the John Doe judgment must be determined in the context in which it was sought, and in relation to the policy provisions.
 
 
 9
 There had been extensive and lengthy investigation of the accident including the possibility that the U-Haul trailer had run over the boy. The medical payments were made, but the plaintiff was unable to receive any satisfaction on the uninsured motorist claims. He hired an attorney, as indicated above, who sought to get some reaction from the carriers as to the claim and also as to procedure they wanted to follow. He inquired about arbitration, but did not request it. He advised the carriers and their attorney about the contemplated John Doe suit and, as mentioned, received a letter that they had no objection to such a suit. Judgment was thereafter obtained.
 
 
 10
 The uninsured motorist provision in the several policies provides that "no cause of action shall accrue to the insured unless . . . (a) suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction, or (b) agreement as to the amount due under this Part II has been concluded or (c) the insured has formally instituted arbitration proceedings. . . ." The provision continues and states that a judgment in such a suit shall not be binding or determinative as to whether the insured is legally entitled to damages or the amount thereof. Also the provision states that such a judgment shall not be a bar to ". . . any subsequent proceeding brought for the purpose of making such determinations."
 
 
 11
 Thus the insured is required to file suit against the uninsured motorist. This the plaintiff did, and it appears from the record that the John Doe proceeding was the only way it could be done. It was apparent that no agreement could be reached as contemplated by the policy as the company was in effect denying coverage. The appellants here assert that the suit was defective, and also the Idaho court did not have jurisdiction because it was not shown that John Doe was a resident of Idaho.
 
 
 12
 As a suit required by the policy, we must hold that it was at least adequate for such purpose, and appears to be all that could be done under the circumstances. The carriers had advance notice of it, and indicated they had no objection. They later received copies of the complaint. The reason for the suit was obvious, and it was apparent that the matter of liability of the uninsured motorist would be covered in the judgment. As the record stands, the carriers acquiesced in the suit, and cannot now object to its form. They also advance no valid reason as to why the Idaho court did not have jurisdiction. The point that the defendant may not have been an Idaho resident is no more than speculation. The policy required that the suit be brought, and there is nothing to show that the carriers did not have a full opportunity to participate on the liability issue had they wished to do so. It, to that extent, thus apparently could have been an adversary proceeding; at least no reason is shown why it could not have been. The carriers were in an unusual position as to the Idaho suit because, in addition to the usual lack of interest by an uninsured motorist, there was the fundamental problem of lack of identity of the defendant. It was thus apparent from the outset that the liability issue would be determined by a default judgment if nothing more was done. There must have been some reason for the policy requirement that suit be brought despite the provisions in the last portion of the policy quotation appearing above relating to the judgment.
 
 
 13
 In Matthews v. Allstate Insurance Co., 194 F.Supp. 459 (E.D.Va.), the insured took a default judgment against uninsured motorists after having obtained service of process by some means other than personal. The uninsureds were members of the Armed Forces and the default judgment entered against them was voidable since no attorney had been appointed to represent them. The court ruled that the judgment was effective against the insurer, who had requested a copy of the summons and complaint in that earlier action, and had been served in compliance with its policy provisions. The insurer in the cited case, by first indicating some intention to pay and then participating in numerous discussions with the insured's counsel, never once suggesting it could not appear nor defend in the state court action, lulled the insured and her counsel into a sense of security which created within the insurer the duty to speak. Other cases in which judgments against uninsured motorists (all of whom had been identified by the time of the suit) as to liability and damages were held enforceable against the insurance company, have held that where the insurer has been given notice of the suit, and thus an opportunity to participate in it, its reliance on unenforceable arbitration clauses and no action provisions (such as the "alternative method" clause in the policies) will not cause a release from the effect of the judgment. The failure of the uninsured defendant to appear for trial and the resulting lack of participation by any parties adverse to the insured in these proceedings have not been considered sufficient to bar the insured's use of the judgment so obtained as the final determination of the issues covered in that judgment. See Boughton v. Farmers Insurance Exchange, 354 P.2d 1085 (Okl.); MFA Mutual Insurance Co. v. Lovins, 248 F.Supp. 108 (E.D.Ark.). In MFA, the court indicated appellant insurance company's failure to attempt to intervene in the state court action was a critical factor. Had that company attempted to intervene and been refused, the result in the federal court might have been entirely different, the court concluded.
 
 
 14
 The only significant fact present in the instant case which did not appear in the cited cases is that the uninsured motorist was also unidentified. In each of the cited cases, the state court action was brought against a named individual who was either served personally or by some form of substituted service. But in all the cases, the factor found by the courts to be critical appears to be the knowledge and seeming acquiescence of the insurer, a condition present in the instant case as well. The insurers' inactivity, once having been notified of the actions against the uninsured motorist, did not exempt them from the finality of the judgment. As is pointed out in Boughton and MFA, the actions against the insurers are not for the collection of the judgment rendered in the actions against the uninsured motorists, but rather are suits to recover under the terms of policies which provide that the insurers agree to pay all sums which the insureds shall be legally entitled to recover as damages from the owners or operators of the uninsured automobiles. The MFA decision goes on to explain how the remedy (included in the policies involved in this lawsuit) provided in most insurance contracts allowing an action directly against the insurance company is not the best or most efficient method by which the insured can obtain relief.
 
 
 15
 These authorities holding that the suit against the uninsured motorist determines the liability issue are applicable here. Again it must be observed that here the suit was brought during the time when the insurers were denying coverage, thus the parties did not reach the other procedures described under the policy. Thus the mechanics provided for resolving the problems could not be used. Time was passing and time ran out for several of the procedures. The accident took place in August 1970; claims were filed in September 1970; the medical payments were made in January 1971; plaintiff retained an Idaho attorney in February or March 1971 after a bitter session with the insurer's claims manager; negotiations continued; the "no objection" letter was in March 1971; the John Doe judgment was had in September 1972, and sent to the insurers; and the first settlement offer was made by the insurers in March 1973. Thus the investigations and related matters lasted about three years, but it was not only the time span but the fact that coverage was denied during this period, preventing for all practical purposes the application of the uninsured motorist provisions. This aborted the settlement and arbitration provisions and prevented a timely suit against the company alone on the liability issue of the provision.
 
 
 16
 In view of the authorities cited above and the circumstances, we must hold that the trial court was correct in its ruling on the partial motion for summary judgment.
 
 The policy provision requires also that:
 
 17
 " . . . (D)etermination as to whether the insured is legally entitled to recover such damages, and (if so entitled) the amount thereof, shall be made by agreement between the insured and the Company or, in the event of disagreement, by arbitration; . . . ."
 
 
 18
 Thus the appellants here urge that no arbitration was demanded by the insured, and thus the insured did not complete the requirements laid down in the policy. There is a clear split of authority on the validity of such agreements to arbitrate, but there is also here present a preliminary factor to consider. There would seem to be some serious question as to whether the arbitration clause ever became operative, because the carriers from the outset took the position that the accident was not covered by the policy.
 
 
 19
 The denial of coverage, as represented by the refusal to negotiate the uninsured motorist coverage, was obviously based on a theory that the U-Haul trailer ran over the boy rather than the following motorist. Thus the parties really did not get beyond the coverage problem. However, in view of such a position, we must hold, as apparently did the trial court, that the carriers cannot now raise the arbitration issue as a valid requirement not met.
 
 
 20
 Further as to the arbitration issue, the case law and statutory law in Utah makes it clear that agreements to arbitrate future issues are not valid. Barnhart v. Civil Service Employees Insurance Co., 16 Utah 2d 223, 398 P.2d 873. The provisions here concerned are thus not enforceable in Utah. There is no statutory provision and no case law in Idaho which would invalidate the arbitration clauses. There is authority that the rule prevailing in the forum controls. Haury v. Allstate Insurance Co., 384 F.2d 32 (10th Cir.); Dickson v. Hoffman, 305 F.Supp. 1040 (D.Kan.).
 
 
 21
 The insurance policy anticipates the possibility that the arbitration provision may not be enforceable, and provides for a suit between the insured and the company within one year of the accident. The attorney for plaintiff wrote the attorney for Farmers Insurance on January 10, 1973, which was some three years after the accident, that the John Doe suit was commenced, that Farmers had been notified previously, and the complaint and summons sent to the company. This letter (plaintiff's Exhibit 15) also recites that suit was considered necessary because of the policy provision so recited, and "Due to the fact that Farmers was not willing to recognize the legal liability or to discuss arbitration."
 
 
 22
 From all the circumstances, we agree that the trial court was correct in holding that the arbitration requirement, if it ever was valid, had been waived by the carriers.
 
 
 23
 The appellants raise several other points on the appeal, with attention given especially to the award of punitive damages.
 
 
 24
 The plaintiff personally, and not in a representative capacity, sought damages arising from the refusal of the insured to pay the claims. There were both compensatory and punitive damages. Recovery on the uninsured motorist coverage was sought on behalf of the son, who under the policy provisions was an insured in his own right. The claims asserted under the policy were on behalf of the son and arose from his injuries. Thus the plaintiff-father in this suit sought damages to himself for the refusal of the carriers to pay the claim. The jury expressly on the verdict form awarded no compensatory damages to the father, but did award him punitive damages in the amount of $36,000.00. The jury awarded compensatory damages to the son in the amount of $27,500.00. The appellant urges that the father was not an aggrieved party and could not recover on a claim of wilful and bad faith conduct by the carriers. Appellee urges that he is the named insured; that losses under the policy were to be paid to him if an injured member of his family was a minor; and that the policy was to protect his household for which he was responsible.
 
 
 25
 There was no question raised as to the right of the plaintiff to bring the action for himself and in a representative capacity. He, under the insurance contract, could so bring the action; he was the contracting party. The attorneys for the insurers prepared the form of verdict relating to the father's claim, and in it separated the compensatory damages from the punitive damages. The instruction as to punitive and compensatory damages requested by the insurers was given by the trial court. We must hold that plaintiff individually became a party to whom the jury could properly award punitive damages.
 
 
 26
 The appellants also urge on this appeal that it was improper for the jury to award punitive damages when no compensatory damages were allowed. This issue was not raised in the trial court in any way and cannot be considered here. City of Greeley, Kansas v. United States, 335 F.2d 896 (10th Cir.).
 
 
 27
 The record contains evidence as to the punitive damage issue sufficient to submit the issue to the jury and also upon which the jury could base its verdict.
 
 
 28
 As indicated above, the trial court permitted "stacking" of the policies to allow recovery on each of the three separately. Damages were such that the jury awarded the maximum uninsured motorist coverage on each policy. The parties appear to have tried the substantive law issues under Idaho law without making an express reference thereto in the record. The briefs on this appeal indicate the case was so tried. As to the "stacking" issue, the Utah authorities indicate this would not have been permitted if Utah law was applicable. See Martin v. Christensen, 22 Utah 2d 415, 454 P.2d 294, and Russell v. Paulson, 18 Utah 2d 157, 417 P.2d 658. The trial judge, of course, did not apply such a rule, and thus determined that "stacking" would be permitted under Idaho law. There is no Idaho statutory provision specifically relating to the problem, and there appear to be no decisions on the issue. Under these circumstances, we cannot say that the trial court was in error in permitting "stacking." The arguments and authorities on the issue are collected at 28 A.L.R.3d 551, including the application of "other insurance" clauses, and in view of the variations there indicated, the ruling of the trial judge here is not clearly erroneous.
 
 
 29
 The final issue raised is the award by the trial judge of prejudgment interest by the court from the date of the accident. There is no authority advanced which will support such interest. It is apparent that the liquidated amount doctrine is applicable. Interest is only allowable after judgment. See Taylor v. Herbold, 94 Idaho 133, 483 P.2d 664, and Lyon v. Hartford Accident & Indemnity Co., 25 Utah 2d 311, 480 P.2d 739. The amount involved could not be computed prior to judgment. It was a typical tort claim.
 
 
 30
 The case is affirmed except as to the award of prejudgment interest by the trial court, and as to that, it is reversed. The case is remanded for entry of a judgment in an amount not to include the prejudgment interest.
 
 
 
 *
 Of United States District Court for the Eastern District of Oklahoma